Helen M. Kellogg died testate February 8th, 1933, a resident of New Jersey, leaving her entire estate to her daughter, Helen K. Hedges, and naming her executrix. In computing and assessing the transfer inheritance tax due from this estate, the commissioner included an inter vivos transfer made by the decedent on July 5th, 1929, to Chemical Bank and Trust Company of New York, in trust for the benefit of her daughter during the latter's life, with remainder over at the daughter's death to the daughter's children and/or their issue.
At the date of the transfer this trust fund was valued at approximately $200,000; at decedent's death its value (corpus) was appraised at over $250,000. The commissioner determined that it was a transfer intended to take effect in possession or enjoyment at or after the death of the transferor; was therefore taxable under the statute; and assessed a tax of $4,909.79 in respect thereof.
The only question argued on this appeal is as to whether the transfer was or was not taxable as aforesaid.
The trust conveyance was irrevocable; became operative immediately; and left the transferor with no control over the fund. It was, however, made in pursuance of an agreement between the transferor and her daughter, whereby the daughter bound herself and her heirs, executors and administrators to pay to the transferor during the latter's life an annuity of $15,000 per year. The tax commissioner therefore took the view that (a) the two instruments are to be considered together as parts of a single whole transaction; (b) that it is the substance and not the form of the transaction which controls; (c) that reservation of income from, or some other interest in, the very thing transferred is not indispensable to taxability under this clause; (d) that if the result of the transaction is that the transferor received back for her life, that which in substance and practical effect amounts to beneficial possession and enjoyment of the thing transferred, it is thereby established that the transfer was intended not to take effect in possession or enjoyment until *Page 324 
at or after the transferor's death; (e) that in the instant case the transferor did receive back for her life that which in substance and effect amounted to the beneficial possession and enjoyment of the thing transferred; (f) that the transfer was intended as aforesaid; and (g) was therefore taxable.
Propositions (a) and (b), above, are undoubtedly true; they have repeatedly been so held. Proposition (d) may also be taken as true, for the purposes of this consideration. (Whether it is in fact true, as stated, depends on the meaning of the words "amounts to.") Propositions (c), (e) and (f) however are not true; and the conclusion is erroneous in so far as concerns taxability on the basis here under discussion.
That which is material and all-important is whether the thing which has been done, amounts in substance to the thing which the legislature has made taxable, — not whether the thing which has been done has in substance accomplished the purpose of the transferor. If the thing which is done does not amount in substance to the thing which the statute has made taxable, then it is not taxable even though it accomplishes substantially the same result as would be accomplished by the thing which the statute has made taxable. For example, — under the statute imposing a stamp tax on checks, bills and notes, the withdrawal of money by a depositor from his bank account was taxable if done by a check drawn to his order, but not if the withdrawal was done personally in exchange for a receipt to the bank instead of a check.
So here, — the thing which the statute (under this clause) makes taxable, is a transfer which is intended to take effect in possession or enjoyment not until at or after the transferor's death. If, (either by the same or a separate instrument), the income from, or some other interest in, the thing transferred, is reserved to, or given back to, the transferor, or in any other way some interest in that thing is withheld from the transferee until the transferor's death, such transfer is taxable under the statute; but if no interest in, or identifiably tied up with, the thing actually transferred is reserved from the transferee until the transferor's death, *Page 325 
then the transfer is not taxable (under this clause of the statute), — notwithstanding the transferor may have exacted from the transferee an obligation to pay the transferor an annuity for life (not payable from, but entirely separate and distinct from the thing transferred) and thereby substantially accomplished his purpose of giving the corpus and at the same time reserving to himself the income until his death. In re Honeyman, 98 N.J. Eq. 638,129 Atl. Rep. 393; affirmed, sub nom. Bugbee v. Board ofHome Missions, 4 N.J. Mis. R. 99, 131 Atl. Rep. 924; affirmed,103 N.J. Law 173, 134 Atl. Rep. 915; Fidelity Union Trust Co. v.Martin, 118 N.J. Law 277, 192 Atl. Rep. 74, affirmed,119 N.J. Law 425, 426.
In the instant case the transferor received back, in exchange for the absolute, immediately effective transfer of the $200,000 trust fund an obligation which bound the transferee and her estate to pay to the transferor for the latter's life, the sum of $15,000 annually, — not from, nor in any way connected with or dependent upon, the income from the trust fund nor the corpus
thereof. The transfer was therefore not one which was intended not to take effect in possession or enjoyment until at or after the death of the transferor, — any more than if the consideration received by the transferor had been the present conveyance of a valuable residence estate, for instance; and is not taxable under the clause in question.
It does not follow from this, however, that the transfer is not taxable under another clause of the statute, — as a transfer made in contemplation of death. If the transfer is in fact taxable under the statute under any clause thereof, — if the tax is correct and sustainable on any ground, it ought not to be set aside as erroneous simply because it was assessed on the wrong theory.
Consideration of the facts in this case seems to leave little, if any, room for doubt that the transfer in question was a transfer in contemplation of death, under the meaning and intent of the statute as determined in Schweinler v. Martin, 117 N.J. Eq. 67,175 Atl. Rep. 71; affirmed, 13 N.J. Mis. R. 722,180 Atl. Rep. 744. The transferor was well along *Page 326 
in years; the transfer was to her daughter and the daughter's children, — the natural objects of her testamentary bounty; it amounted to about four-fifths of her entire estate; and the transferor took care to see that she would be amply provided for during the remainder of her life, by obtaining in exchange the life annuity obligation. It seems obvious that the transfer was made in lieu and stead of a testamentary disposition; and hence was made in contemplation of death.
The respondent seems to have conceded that it was not made in contemplation of death. If so, it would appear that such concession was improvidently made, and should not, or indeed cannot, be held binding upon the state. In view of the fact that this point was not argued on the appeal, however, fairness and justice requires that the appellant be given opportunity to be heard on this point if she so desires, before final determination is made by the court. Leave will therefore be given that application may be made within twenty days, for re-hearing and argument on this point, if such be desired.
Otherwise the taxability of the transfer must be upheld; but the commissioner will be directed to correct the computation so as to make proper allowance for the financial value of the consideration received by the transferor. The $15,000 annually is obviously in excess of the income which would normally be received from the fund transferred. Cf. the determination in the Day estate (Fidelity Trust Co. v. Martin, supra). *Page 327