163 Cal.App.2d 255 (1958)
Estate of FLORENCE R. STEVENS, Deceased. ROBERT C. KIRKWOOD, as State Controller, etc., Appellant,
v.
D. Z. ALBRIGHT, as Executor, etc., et al., Respondents.
Civ. No. 22784. 
California Court of Appeals. Second Dist., Div. Three. 
Aug. 29, 1958.
 James W. Hickey, Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, Joseph D. Lear and William R. Elam, Assistant Inheritance Tax Attorneys, for Appellant.
 Chester E. Cleveland, Latham & Watkins, A. R. Kimbrough and C. Robert Wilmsen for Respondents.
 PATROSSO, J. pro tem. [fn. ]
 Appeal by the Controller of the State of California from an order fixing the inheritance tax in the above-named estate.
 The sole question presented is whether certain inter vivos transfers by the decedent, hereinafter to be mentioned, are subject to inheritance tax.
 The facts are not in dispute. The decedent, Florence R. Stevens, died on May 29, 1955, at the age of 93. On December 20, 1935, when Mrs. Stevens was 73 years of age, she conveyed, by deed absolute in form, three parcels of real property to her daughter Kathryn Stevens Albright. Contemporaneously with the execution of the deed, however, an agreement was executed between Mrs. Stevens and Kathryn which, after reciting the conveyance of said real properties to Kathryn, provides that in consideration of said conveyance and of the natural love and affection between the parties Kathryn agrees to pay to her mother for the term of the latter's life the sum of $600 per month commencing January 10, 1936, as and for an annuity of $7,200 per annum. Kathryn also assumed and promised to pay the unpaid balance of $34,000 due upon a note secured by a mortgage upon one of the parcels so transferred to Kathryn. Additionally, the agreement recites that the parties had agreed that the net value of the real properties transferred to Kathryn, after deducting the $34,000 mortgage, was $121,000 and then proceeds to provide as follows: "(4) Of the amount of the property transferred *260 to the party of the second part [Kathryn] Seventy-five Thousand Dollars ($75,000.00) thereof represents the cost of the annuity hereinabove provided for. The balance the party of the first part [Mrs. Stevens] has given, and by these presents does give, to the party of the second part without restriction as an outright gift."
 Also contemporaneously with the execution of the deed and the agreement last above mentioned Kathryn executed a declaration of trust wherein she acknowledged that she held an undivided one-half interest in and to the properties conveyed to Kathryn by Mrs. Stevens in trust for another daughter of Mrs. Stevens, Esther Stevens Heinsch. It was therein provided that the trust thereby created was to continue until the death of Mrs. Stevens and that the net income from the trust property after deducting therefrom all expenses incurred in the maintenance and operation thereof, all payments made on account of the mortgage upon the one parcel and the retention by the trustee of $300 per month (one-half of the $600 monthly payment which Kathryn had agreed to pay to her mother) was payable to Esther or in the event of her death prior to the termination of the trust to Esther's children. Upon the termination of the trust the corpus was to vest in Esther or in the event of her prior death in her children.
 At the same time, Kathryn and Esther entered into an agreement which, after reciting the annuity agreement entered into between Kathryn and Mrs. Stevens and the agreement of the former to pay the mortgage upon one of the parcels transferred to Kathryn and the execution of the declaration of trust last above mentioned, provides that Esther acknowledges that Kathryn executed said annuity agreement for the joint benefit of Kathryn and Esther and the latter "assumes and agrees to share equally with second party [Kathryn] any and all obligations created under said annuity agreement."
 [1] Appellant contends that the transfer of the property in question is taxable under each and all of sections 13643, 13644 and 13645 of the Revenue and Taxation Code. This contention is necessarily premised upon the proposition that the transfer was made without a "valuable and adequate consideration" as that term is defined in section 13641 of the Revenue and Taxation Code, for the sections under which the right to tax is asserted by the appellant have application only to such transfers. Thus we first address ourselves to a consideration of the evidence upon this subject.
 It is admitted that the net value of the properties transferred, *261 as of the date of the transfer, was $121,000. Additionally, it is made to appear that the annual net income realized by Mrs. Stevens from the property so transferred during the three years immediately preceding the transfer was less than the $7,200 annuity agreed to be paid commencing with the year 1936 as aforestated. Specifically, the net income from the property during said years, computed without any deduction for annual depreciation, was as follows: 1933, $5,279.49; 1934, $4,054.62; 1935, $6,391.31.
 As to the net income realized by the daughters from the property after the transfer, the evidence was as follows: From 1935 to 1940, the monthly net income from the transferred property was sometimes sufficient and sometimes not sufficient to equal the $600 monthly payment; and from 1940 to decedent's death on May 29, 1955, the net income was equal to or more than $600 per month. The exact amount of the net income realized by the daughters from the transferred property during the years from December 20, 1935, to May 29, 1955, cannot be ascertained from the record; but the evidence clearly establishes that substantial net income was realized by the daughters from the transferred property, which said net income during the period from 1940 to May 29, 1955, was equal to or in excess of $600 per month. The evidence also showed that, during 1946, the daughters sold portions of the transferred property, realizing a net of $198,826.06 therefrom and reinvested the proceeds in other investments for their own account.
 The evidence further discloses that, during each and every month from January 1936 to May 1955 the daughters paid to their mother the sum of $600 pursuant to the annuity agreement; and that the total of the annuity payments so paid by them to Mrs. Stevens amounted to $140,400. Also the daughters paid the mortgage indebtedness of $34,000 which they had assumed and agreed to pay. Further, the daughters paid for substantial alterations and improvements to the transferred property the total sum of $14,600.
 There was evidence adduced by respondents that, on December 20, 1935, an annuity contract providing a $600 monthly life income to a woman age 73 (Mrs. Stevens' age at said time) could have been purchased from insurance companies at cost ranging from $65,520 to $67,980 for such a life annuity contract containing no cash refund provisions, and at cost ranging from $84,900 to $90,960 for such an annuity contract *262 containing cash refund provisions in event the annuitant died before she had received a return equal to the premium paid.
 In this connection, there was also the further testimony of decedent's son-in-law (a banker of long experience who had for some years been assisting Mrs. Stevens in the management of her properties) that an attempt had been made in 1935 to determine the capitalized value of an annuity providing for payment of a $7,200 annuity for life to a woman age 73; that various insurance companies had been contacted; that a variety of figures had been quoted by the insurance companies; and that $75,000 seemed to be a reasonable figure for the capitalized value of such an insurance contract taking into consideration the variety of figures quoted by the various insurance companies.
 The determination of the question as to whether the transfer was supported by a valuable and adequate consideration is dependent in part on the answer to a related question, later to be considered; to wit, whether it can be held, as found by the trial court, that Mrs. Stevens and Kathryn entered into two separate and distinct transactions, namely: first, a bargain and sale exchange of an undivided 75/121st interest in the said real property for an annuity having a fair market value of $75,000; and, second, a complete, absolute and irrevocable gift (independent of the exchange) of an undivided 46/121st interest in the said real property.
 The first of the two bases upon which the trial court found and respondents contend that the transfer was made for a valuable and adequate consideration is that the payments made by the daughters to or on behalf of their mother (i.e., the annuity payments in the total sum of $140,400 and the payment of $34,000 mortgage indebtedness) constituted a valuable and adequate consideration for the transferred property.
 More specifically, the trial court, in this particular connection, found: "The total amount of such sums so paid [by the daughters to their mother pursuant to the annuity agreement] equals $140,400.00. Also, [the daughters] paid the mortgage indebtedness of $34,000.00 which they had expressly assumed and agreed to pay. The total consideration paid therefor by [the daughters] from their own funds which did not originate directly or indirectly with the decedent was $174,400.00. The consideration paid was valuable and adequate and was more than equal in money or money's worth to the full value of the three parcels of property described in the inheritance tax report." (Emphasis added.) *263
 [2] While denominated a finding of fact the last sentence thereof, which we have emphasized, is clearly a conclusion of law the validity of which is dependent upon the probative facts from which it is drawn and concerning which there is no dispute. The conclusion therefore is not, as respondents contend, binding upon this court unless it be true as a matter of law that the adequacy of the consideration paid or given in return for a promise to make annuity payments is to be determined as of the date of the death of the annuitant and measured by the total amount of payments made pursuant thereto during the lifetime of the annuitant. We have concluded that the law is otherwise and it may not be held that the payments so made by the daughters constituted a valuable and adequate consideration for the transferred property.
 In the first place, as previously noted, the undisputed evidence shows, and the trial court also found, that the net income received by the daughters from the transferred property was equal to or more than $600 per month from 1940 until the death of the decedent on May 29, 1955; and that, from December 20, 1935, to January 1, 1940, said net income in some months would equal $600 and in some months would not equal $600.
 While the evidence may fall somewhat short of definitely establishing, as the controller contends, that the net income received by the daughters from the transferred property equaled or exceeded the total amount of the $600 monthly payments made to the mother, it clearly establishes at the minimum that net income in excess of $111,000 was received by the daughters from the transferred property.
 The trial court's aforementioned conclusion that the said $174,400 so paid by the daughters in annuity and mortgage payments was more than equal in money or money's worth to the full value of the transferred property was obviously made without taking into consideration either the net income realized by the transferees from the transferred property during the same period, or the sum which the transferor might have normally been expected to have received from the transferred property or on its commuted value.
 Assuming without deciding at this point that the said payments could be properly considered at all (in view of the other evidence and findings as to the fair market value of the annuity agreed to be paid at the time of the transfer, as hereinafter discussed) in determining whether the transfer was made for a valuable and adequate consideration, there is no *264 warrant in our opinion for treating the gross amount of the said payments so made as the value of the consideration given without making any adjustment or deduction therefrom for the net income received by the transferees from the transferred property; or at least without making adjustment and deduction for the income which the transferor might normally have been expected to have received from the transferred property or on its commuted value.
 [3] We see no escape from the logic of the principle enunciated in Fidelity Union Trust Co. v. Thayer-Martin, 118 N.J.L. 277 [192 A. 74, 80] and Updike v. Commissioner of Int. Rev., 88 F.2d 807, 813, that, in determining the value of an annuity promised to be paid to a transferor in consideration of a transfer of property to the transferee, the net income received from the transferred property or at least the income which the transferor might have normally been expected to have received from the transferred property or on its commuted value, must be deducted in determining the value of the consideration (annuity) given for the transferred property.
 [4] In Fidelity Union Trust Co. v. Thayer-Martin, supra, where certain of the transferees had agreed to pay annuities to the transferor in excess of the amount which the transferor might normally have realized upon the principal amount transferred, the Supreme Court of New Jersey enunciated said principle succinctly, as follows (p. 80): "We also concur in the result reached by the Vice-Ordinary ... as to the basic principle upon which the actual financial value of the consideration received by the donor for each transfer should be computed. Summarized it may be stated thus: That the consideration of adequate financial value is the amount by which the sum agreed to be paid annually exceeds the sum which the donor would normally receive on the fund commuted as of the date of the instrument of transfer."
 In Updike v. Commissioner of Int. Rev., supra, where the transferor in contemplation of death had transferred property to his three sons in consideration of their promise to pay the father during his life the yearly sum of $27,000 and where it appeared that the annuity of $27,000 amounted approximately to the income derived from the transferred property, the Circuit Court of Appeals (Eighth Circuit), after pointing out that the father's estate would have been taxed for the entire value of the transferred property had he kept the property until his death, stated, inter alia, as follows (p. 813): *265 "That being the situation, why should the tax be less where he has transferred in contemplation of death and the transferee in substance has agreed to collect the income and pay it back to him in the form of an annuity? ... [T]he value of the transferred property at the time of decedent's death was not diminished by the fact that there had been paid back to him in the form of an annuity an amount substantially equal to the income derived from [the transferred] property. ... To regard such an annuity as consideration would lead to absurd consequences." [5] While it is true, as respondents point out, that the Updike case was essentially determined upon the basis that the transfer therein was made in contemplation of death and that the federal estate tax regulations did not allow an annuity to be deducted where given in exchange for a transfer of property made in contemplation of death, the logic of the court's observations that an annuity cannot be regarded as consideration for a transfer where the income derived from the transferred property is substantially equal to the amount of the annuity, is not and cannot be disputed.
 [6] Also while the court in the Updike case had before it a situation where the income derived from the transferred property was substantially equal to the amount of the annuity, it necessarily follows that where the transferred property produces income although not equal to the amount of the annuity there is no consideration to the extent of the income derived therefrom.
 Nourse v. Riddell, 143 F.Supp. 759, cited and relied upon by respondents, is factually distinguishable from the instant case. If, however, it may be said to support the proposition that, upon the facts of the instant case, the adequacy of the consideration for a promise to make annuity payments is to be determined as of the date of the annuitant's death and measured by the total amount of the payments made during the annuitant's lifetime we cannot subscribe thereto.
 [7] Further, the respondents' own evidence, construed in the most favorable light to them, discloses and the trial court found, that the fair and reasonable value of the annuity at the time of the transfer was not in excess of $75,000. In view thereof and for the reasons set forth immediately below, it cannot be held that the part of the consideration for the transfer represented by the annuity is to be evaluated at $140,400 (the total of the annuity payments made to the mother) as found by the trial court. *266
 [8] It is, of course, the established rule in the law of contracts that the adequacy of consideration must be determined as of the date of the agreement. (Drullinger v. Erskine, 71 Cal.App.2d 492, 495 [163 P.2d 48]; Long Beach Drug Co. v. United Drug Co., 13 Cal.2d 158, 165 [88 P.2d 698, 89 P.2d 386]; 12 Cal.Jur.2d 225, 226.)
 [9] There is no reason why the same rule should not apply in determining the adequacy of the consideration given for an inter vivos transfer under the inheritance tax law. Indeed if the adequacy of consideration for annuity contracts were to be determined as of the date of the annuitant's death many such transactions, not otherwise taxable, would be rendered so by the fortuitous circumstance that the annuitant died before the payments received equaled the consideration paid for the contract.
 Briefly, respondents' contention is that there is no logical reason nor rule of law, except perhaps in eminent domain cases, which forbids the use of knowledge acquired later in ascertaining a value which, if known at the valuation date, would have materially affected the amount fixed as the price or value. Accordingly, respondents urge that, in evaluating the consideration given for the transfer (the annuity), said annuity should be evaluated in accordance with the amount of the actual payments later made to the annuitant. However, it is implicit in their argument and essential to their contention that the other factor involved, i.e., the transferred property should be evaluated as of the date of the transfer.
 [10] It is wholly inconsistent to evaluate the property transferred as of the date of the transfer and to evaluate the consideration given (the annuity) as of a later date, as the respondents contend and as the trial court in fact did; and it would further appear that, if the value of the annuity is to be determined in accordance with the situation existing at date of the annuitant's death, the value of the property should likewise be valued as of date of the annuitant's death. In the instant case this would only serve to prove that there was not an adequate consideration for the transfer, since the transferred property had value, as shown by the inheritance tax appraiser's report, of $273,250 as of the date of the annuitant's death as compared with the $174,400 paid to the annuitant or on her behalf.
 The second of the two bases upon which the trial court found and respondents contend that the transfer was made for a valuable and adequate consideration is that Mrs. Stevens *267 and Kathryn, in the view of the trial court, entered into two separate and distinct transactions; namely, first, a bargain and sale exchange of an undivided 75/121st interest in the transferred property for a valuable and adequate consideration of $75,000; and, secondly, a complete, absolute and irrevocable gift (independent of said exchange) of an undivided 46/121st interest in the transferred property from Mrs. Stevens to Kathryn.
 Although certain of respondents' own evidence establishes that the annuity in question could have been purchased at cost ranging from $65,520 to $67,980 and although appellant contends that it had a lower value if evaluated in accordance with his "Combined Experience Tables of Mortality," there is no question that there was some evidence (i.e., the testimony aforementioned of decedent's son-in-law) sufficient to sustain the trial court's finding that the annuity had a fair market value of $75,000 as of the time of the transfer.
 The primary questions to be determined in this connection are therefore: Whether the trial court's findings that the parties entered into the two said separate and independent transactions can be sustained; and, if so, whether the giving of a consideration adequate for the transfer of a 75/121st interest in the transferred property is adequate where an accompanying gift of a 46/121st interest is also made to the transferee.
 As hereinbefore quoted in full, the agreement between Mrs. Stevens and Kathryn by its terms states that of the amount of the property transferred to Kathryn, $75,000 represented the cost of the annuity which Kathryn agreed to pay to her mother, and that the balance was given to Kathryn without restriction as an outright gift.
 The only parol evidence (testimony of decedent's son-in-law) introduced in aid of the interpretation of the agreement added nothing and afforded no aid in interpreting the agreement. Said testimony consisted merely of statements by the witness with reference to the agreement that it was his opinion that there was an outright gift by Mrs. Stevens to Kathryn of the equity (balance) in the property in excess of $75,000 and the $34,000 mortgage indebtedness.
 [11] Accordingly, since the interpretation and legal effect of the said written agreement depended solely on the language of the document, this court on appeal is not bound by the trial court's construction, but may determine the effect of said agreement as a matter of law. (12 Cal.Jur.2d 326, 327.) *268
 [12] There can be no doubt that judged by the language of the agreement alone the decedent purported to make a sale or exchange of an undivided interest in the property for $75,000 and to give to her daughter the remaining undivided interest in the property represented by the value of said property in excess of $75,000; but it does not follow in determining inheritance tax liability that two separate and independent transactions were in reality entered into, notwithstanding the expressed intention.
 [13] As succinctly stated in Estate of Hyde, 92 Cal.App. 2d 6, 14 [206 P.2d 420], "[l]iability in [inheritance tax] cases does not turn upon the intention of the grantor, but upon the character of the interests created by the transfer."
 [14] As further and more completely stated by the Supreme Court of New Jersey in Schroeder v. Zink (1949), 4 N.J. 1 [71 A.2d 321, 325-326]: "In taxing inter vivos transfers the substance rather than the form of the transfer controls. ... So it has been held that the statute is concerned with the net substantial result of the entire transaction. ... As expressed in In re Kellogg's Estate, 123 N.J. Eq. 322 [197 A. 263] ..., 'that which is material and all-important is whether the thing which has been done, amounts in substance to the thing which the Legislature has made taxable,--not whether the thing which has been done has in substance accomplished the purpose of the transferor.' " (Emphasis added.)
 Commenting with apparent approval on the exhaustive treatise by Professor Rottschaefer in 26 Iowa Law Review 514, the court in Estate of Hyde, supra, 92 Cal.App.2d 6, 18, observes: "The author concludes that most of the courts today are no longer using the technical and formal reasoning once employed, but are looking to see, from a realistic standpoint, what economic benefits are in fact shifted by the questioned transfer." (Emphasis added.)
 [15] From any realistic viewpoint, the net substantial result of the entire transaction herein was that the decedent transferred the entire property to the transferee, and received back in consideration therefor the transferee's agreement to pay her $600 per month for life.
 Except for the decedent's declaration that she intended part of the transferred property to be a gift, such transfer was clearly not made for an adequate consideration, since the value of the annuity at the time of the transfer was not in excess of $75,000 and the mortgage indebtedness assumed only amounted to $34,000 making the total of the consideration *269 given $109,000 for transferred property having a value of $155,000 at the time of the transfer.
 [16] The further question is whether a transferor can alter the situation by a declaration that the portion of the transferred property exceeding the value of the consideration given, is intended to be a gift. Under the authorities cited and under any realistic view of the matter, the decedent's intention cannot change "the thing which has been done"; namely, the transfer of the entire property to the transferee for a promise on the transferee's part to pay the transferor $600 per month for life.
 [17] Estate of Thurston, 36 Cal.2d 207, 211 [223 P.2d 12], cited and relied upon by respondents, does not support respondents' position. While it is stated therein that "[i]t is immaterial whether such a transfer is accomplished by a single transaction or, ... by an initial transfer and [a] subsequent relinquishment," the language had reference to a situation where the transferor first made a transfer of real property without consideration to his children and reserved to himself a life estate, and at a later date made a relinquishment (an outright transfer) of his retained interest (his life estate) in said real property.
 The quoted language has, of course, to be construed in relation to the whole context; and, as so construed, it merely means that a transferor might in a single transaction make an outright gift of real property; or, where he first makes a gift but reserves a life estate in the real property, he may later make a relinquishment (an outright transfer) of his retained interest in said real property. Accordingly, it may very well have been that the decedent herein could have made a relinquishment of her interest in the annuity, but she did not do so.
 [18] By analogy and since a transfer under which the transferee promises to make payments to the transferor falls in the same category as a transfer in contemplation of death insofar as tax liability is concerned, it would also seem that the tax on a transfer under which the transferee promises to make payments to the transferor, cannot be avoided by payment of a consideration only equal to the value of an undivided interest denominated as a sale and not equal to the value of the entire property including the undivided interest therein designated as a gift.
 We are not unmindful of Hirsch v. United States (1929), 35 F.2d 982, 986, cited by respondents, wherein the Court *270 of Claims stated in substance, with reference to a somewhat analogous agreement, that the agreement provided for two things, first a gift and secondly the purchase of an annuity; and that the fact that the decedent chose to unite the gift with the purchase of the annuity in one transaction, did not alter the fact that the agreement provided for two different things. The case was however primarily decided on other considerations (i.e., that a transfer of the type made was not taxable as a part of the estate of the decedent under federal statutes materially different from section 13645 of our Revenue and Taxation Code). In any event for the reasons indicated above, we are not disposed to follow it here.
 The final question which remains to be determined is: Whether the transfer in question is one made subject to tax under any provision of the inheritance tax law.
 As previously mentioned, the controller contends that the said transfer is subject to tax under each and all of the following sections of the Inheritance Tax Law: namely, (1) under section 13643 of the Revenue and Taxation Code as a transfer made with intention to take effect in possession or enjoyment at or after the death of the transferor; (2) under section 13644 as a transfer under which the transferor expressly or impliedly reserved for his life an income or interest in the property transferred; and (3) under section 13645 as a transfer under which the transferee promised to make payments to or care for the transferor.
 Much of the argument in the briefs is devoted to the question of whether the said transfer is subject to tax under section 13643 or section 13644, and to the question of whether Estate of Hyde, supra, 92 Cal.App.2d 6 (where it was held that the transfers made therein pursuant to agreement on the part of the transferees to pay annuities to the transferor were subject to the tax under 13643 and 13644), is applicable and controlling herein.
 In our opinion, however, it is unnecessary to consider whether the transfers herein are subject to tax under said sections 13643 or 13644 for the reason that the transfer made herein is in any event clearly subject to tax under section 13645 of the Revenue and Taxation Code.
 It should be mentioned at this point that the question of whether the transfers made in the Hyde case were taxable under said section 13645 was not passed upon in that case (see the opinion in Estate of Hyde, supra, at p. 21), for the reasons that most of the transfers there involved were made *271 before the provisions contained in said section were first enacted into law (Stats. 1935, ch. 358, pp. 1266, 1268) and were held in any event to be taxable under sections 13643 and 13644.
 Section 13645 of the Revenue and Taxation Code provides, as follows: "A transfer conforming to Section 13641 [i.e., an inter vivos transfer made without a valuable and adequate consideration] and under which the transferee promises to make payments to or care for the transferor is a transfer subject to this part."
 Said section is a codification of the last clause of subdivision (3)(b) of section 2 of the "Inheritance Tax Act of 1935" (Stats, 1935, ch. 358, pp. 1266, 1268, effective June 25, 1935), which was in effect at the time the transfer herein was made and which provided that inter vivos transfers made without valuable and adequate consideration were subject to inheritance tax when: "(b) Intended to take effect in possession or enjoyment at or after [the transferor's] death, or in which a life income or interest is reserved by the grantor, either expressly or impliedly, or by the grantee promising to make payments to or care for the grantor." (Emphasis added.)
 Said provision now codified as section 13645 of the Revenue and Taxation Code was first added to the inheritance tax law in 1935. The prior provisions of the inheritance tax law simply provided that inter vivos transfers were taxable when made: "(a) In contemplation of the death of the ... donor, or (b) Intended to take effect in possession or enjoyment at or after such death." (Estate of Schmidt, 49 Cal.App.2d 86, 89 [121 P.2d 104]; Deering's General Laws (1931), Act 8443, 2, subd. 3.)
 It had long been a perplexing question before the courts whether a transfer was taxable where the transferee promised to pay the transferor an annuity or to care for him. (157 A.L.R. 964, 995 et seq.; 26 Iowa L.Rev., 514.) It was fairly well established that, if the annuity promised to be paid was dependent upon and only payable out of and to the extent of income to be received from the transferred property, the transfer would be held to be taxable. However, if the transferee made an independent promise to pay an annuity or care for the transferor not tied into or dependent on the income to be received from the transferred property, the cases were in conflict as to whether the transfer was taxable. (157 A.L.R. 964, 995 et seq.; 26 Iowa L.Rev. 514; Fidelity Union Trust Co. v. Thayer-Martin, supra, 118 N.J. Law 277 [192 A. 74].) *272
 [19] In view thereof and of the express and sweeping language of section 13645 (and similarly of the last clause of subd. (3)(b) of 2 of the "Inheritance Tax Act of 1935"), it cannot be doubted that the Legislature intended to close the gap and to subject to tax inter vivos transfers made without valuable and adequate consideration where the transferee promises to make payments to or care for the transferor.
 [20] Respondents in effect are asking us to construe section 13645 as though the words read "under which the transferee promises to make payments (other than annuity payments) to ... the transferor." The section cannot be so read and permits of no such exception.
 [21] Respondents would also have us construe the section as applying only to "support payments" and to hold it inapplicable to the situation herein since there was no evidence that the annuity payments were made as "support payments." The unmistakable wording of the section is in the alternative, i.e., that the transfer is taxable where "the transferee promises to make payments to or care for the transferor." (Emphasis added.)
 [22] Finally, there is no merit to respondents' implied claim that, if section 13645 is construed as having reference to and including annuity payments, such construction would, in principle, subject ordinary annuities purchased from insurance companies to taxation.
 Briefly and as the court noted in Estate of Hyde, supra, the consideration ordinarily paid by the annuitant in the purchase of an annuity policy from an insurance company is adequate. However, if an insurance company should depart from its usual practice of asking and receiving cash payment for the premium for issuance of the annuity contract and if it should elect to enter into an arrangement under which the annuitant transfers to it, or exchanges property, in payment of the premium, there is no reason why such a transfer would not be taxable if the insurance company should receive property having a far greater value than its ordinary premium for the issuance of an annuity contract.
 [23] Our inheritance tax law by its express terms includes all transfers by "bargain" and "sale" where made without adequate consideration (Rev. & Tax. Code, 13641); and a sale or exchange made to insurance company without adequate consideration would be as equally within the purview of the inheritance tax law as the transfer made herein. (See: *273 Schroeder v. Zink, supra, 4 N.J. 1 [71 A.2d 321, 325], in re a contract for purchase of corporate stock.)
 In the appellant's reply brief it is conceded that in valuing the properties transferred for the purpose of determining the inheritance tax thereon there should be deducted from the value thereof as determined at date of death the sum of $34,000 paid on account of the mortgage and the sum of $14,600 paid for improvements by the daughters subsequent to the transfer, and if the appraiser, in his appraisement, has not made allowance therefor he should be instructed to do so.
 The order appealed from is reversed with instructions to the trial court to take appropriate proceedings not inconsistent herewith and to fix the inheritance tax accordingly.
 Shinn, P. J., concurred.
 Vallee, J., concurred in the judgment.
NOTES
[fn. ] . Assigned by Chairman of Judicial Council.