## NORMAN D. JONES AS EXECUTOR OF THE ESTATE OF HELEN JONES, DECEASED *v.* DEPARTMENT OF REVENUE

Joyle C. Dahl, Duffy, Stout, Georgeson & Dahl, Portland, and Frank D. Mayer, Lebanon, represented plaintiff.

Walter C. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered January 8, 1975.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from defendant's order No. IH 73-4, dated June 25, 1973, imposing inheritance tax under ORS 118.010 on the transfer of property known as the Cascade City Center Motel, which was transferred to Marvin W. Hicks and Elenora H. Hicks pursuant to an agreement between the decedent and the transferees, dated December 9, 1970. The plaintiff alleges that the property was transferred for full and adequate consideration and, therefore, not subject to tax under ORS 118.010.

The factual aspects of the case are clear and the parties have stipulated to them. Prior to December 9, 1970, the decedent, Helen Lockhart, then unmarried, was the owner of a 24-unit motel located at 1296 S. Main Street, Lebanon, Oregon. In the year 1970, the decedent, who was then 70 years of age and in good health, sought the aid of brokers and made unsuccess-

ful attempts to negotiate a sale of the property. On December 9, 1970, the decedent entered into a written contract with Marvin W. Hicks and Elenora H. Hicks, who were unrelated to the decedent. The contract in its pertinent part provided for the conveyance of the motel property in question, subject to certain terms and conditions. The decedent, on or about January 1, 1971, delivered possession of all of the property in question, subject to her use of unit No. 11 and a storage room, to be used by her without charge as long as she wished. In return, the Hickses executed and delivered a promissory note for $2,000, payable to the deceased within 18 months of receipt of possession of the property and, in addition, agreed to make monthly payments in advance for the use of the property, at the rate of $250 for the first month and $450 for each month thereafter until the death of the decedent, with the option of purchasing the property at any time for $85,000 in cash. In addition, the contract provided for the normal requirements of the purchasers to pay taxes, keep adequate insurance on the premises, and maintain the property at the same level at which they received it. The contract provided for an escrow agent to hold a deed and bill of sale that had been executed by the deceased at the time of the contract, which was to be delivered to the transferees upon the death of Helen Lockhart or upon the payment of the $85,000 cash purchase price. The contract did not provide for a reduction in the cash purchase price for any monthly payments made prior to the time that the transferees might have exercised the option. In August of 1972, the decedent married the plaintiff, Norman D. Jones, and continued to be married to him until her death on December 6, 1972, which was caused by a sudden heart attack.

The court finds that the written contract was one of sale and purchase, with alternative methods of payment to be elected by the purchasers, with imme-

diate possession and control of the property being transferred to the purchasers on execution of the contract, subject to typical provisons for security of the seller in the event of default.[1]

The question before the court is whether the motel property is includable in the decedent's property for inheritance tax purposes under ORS 118.010.

A pertinent part of subsection (1) of ORS 118.010 states that: "[a]ll property and any interest therein, within the jurisdiction of the state, * * * which passes or vests by survivorship, * * * or by deed, grant, bargain, sale or gift, or as an advancement or division of his or her estate, made in contemplation of the death of the grantor or bargainor or intended to take effect in possession or enjoyment after the death of the grantor, bargainor or donor to any person or persons, * * * is subject to tax at the rate specified in ORS 118.100, to be paid to the Department of Revenue for the use of the state."

The parties have stipulated that the transfer was not in contemplation of death and, therefore, the taxability of the transfer in question depends on whether or not the transfer was "intended to take effect in possession or enjoyment after the .death" of the deceased. It is the plaintiff's contention that the deceased received adequate consideration for the motel property in question. The Hickses obtained possession and use of the property, including all income there-

---

[1] Subsequently, the decedent's personal income tax returns for 1971 and 1972 report the receipt of "rent" from the subject property and depreciation thereon. This evidence of a subsequent contradictory view by decedent as to the effect of the contract was in turn contradicted by the income tax returns of the buyers, who treated rents received as gross income and claimed deductions for operating expenses and depreciation. Testimony to explain the decedent's inconsistency was lacking, and the court finds the net result of the entire transaction was a present sale with title placed in escrow for security purposes. See Schroeder v. Zink, 4 NJ 1, 71 A2d 321, 325-326 (1950).

from, at the time of the execution of the December 9, 1970, contract, subject only to the receipt of the deed and a bill of sale, held in escrow pending the decedent's death (which would be the logical means of terminating the contract in view of the fact that the $85,000 option price was conceded to be far in excess of the actual value of the property).

The plaintiff bases his argument of nontaxability upon the general rule that where the transferor receives, at the time of transfer, adequate consideration for the property, then the bargain will not be considered as a testamentary disposition subject to inheritance tax. *See* 42 Am Jur2d *Inheritance, etc., Taxes* § 125 (1969). This general rule parallels the general rules of equitable conversion which have been recognized in such cases as *Heider v. Dietz,* 234 Or 105, 380 P2d 619 (1963), and *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960). It is the defendant's contention that the consideration received by the deceased for the inter vivos transfer was inadequate and, therefore, the exclusion rule does not apply. Plaintiff alleges in its Pre-trial Brief, 3, that defendant's original inheritance tax deficiency of $66,131.25 was based on the contractual cash sale price of $85,000 less payments of $18,868.75 made by the purchasers to the decedent. However, in defendant's order the true cash value was reduced to $53,460, the value found in the assessment roll for the year of transfer.

The plaintiff contends that the deceased exchanged her rights in the property for rights to an annuity having a similar value. The case of *Estate of Stevens,* 163 Cal App2d 255, 329 P2d 337 (1958), which involves an annuity-purchase, has been cited by both parties for authority on several points. In refference to that case, it is noted that, as in other contracts, the adequacy of the consideration is determined as of the date of the agreement and not at the date

of death. The defendant found that the value of the real and personal property in question for tax purposes under ORS 118.010 was $53,460, as determined by the Linn County Assessor and entered on the assessment and tax rolls (see defendant's Order No. IH 73-4). Prior to the December 9, 1970, contract, the decedent attempted several times to sell the property through brokers and one sale, which was in the final stages of closing before the buyers abandoned the proposed transaction, involved a purchase price of $55,000. The $53,460 value appears to be the best evidence in the record of the value of the property at the time of the contract.

In determining the value of the annuity which the decedent received in exchange for the property, the plaintiff asserts that federal Treas Reg § 20.2031-10, table A(2) (1970), should be used to compute the value of the annuity as of December 9, 1970. This is the evaluation method provided in ORS 118.150(4), as amended by Or Laws 1973, ch 498, § 1. Prior to that amendment, annuities were valued, for inheritance tax purposes, using a 4 percent interest rate and the same life expectancy for both male and female lives. Because the court at this point is attempting to determine whether or not adequate consideration was received, rather than valuing the annuity for inheritance tax purposes, the correct tables to be used are those which most accurately reflect the value of the annuity on December 9, 1970. *United States v. Righter,* 400 F2d 344 (8th Cir 1968), 68-2 USTC ¶ 12,554, 22 AFTR2d 6071. An informed person's view of the adjustments necessary to determine the annuity value on that date would include an interest rate of more than 4 percent and certainly would recognize the difference in life expectancies between male and female.

Treas Reg § 20.2031-10, table A(2) (1970), uses a 6 percent interest rate and a separate female life ex-

pectancy. The court must place itself in the position of a knowledgeable seller if it is to determine whether or not adequate consideration was received by the deceased. The tables provided in Treas Reg § 20-2031-10 more accurately reflect the real world on December 9, 1970, as indicated by their adoption on December 1, 1970, for federal use after December 31, 1970. The following computations are therefore made to determine whether the deceased received adequate consideration for the transfer of the Cascade City Center Motel:

### Computation of Annuity Value

| Factors | Treas Reg § 20.2031-10 |
|---|---|
| 70-year old Female | 7.9234 |
| Monthly Payments | x 1 0272 |
| Total Factor | 8.13892 |
| Yearly Annuity | x $ 5,400 |
| Result | $43,950 |
| Add: 1st Payment | 250 |
| Promissory Note[2] | 2,000 |
| Total Cash Value | $ 46,200 |

In addition to the computation of the value of the annuity and cash received by the decedent, the court must also consider that the decedent received as part of the consideration the use of one of the units at the motel and a value must be placed on such use. Placing a nominal value on the use of the room of $50 per month results in an additional present value for the "in-kind" annuity of approximately $4,933 under Treas Reg § 20.2031-10 (($600 × 8.13892) + $50 = $4,933). The calculations indicate that the decedent received

---

[2] No adjustment was made to impute the interest on the $2,000 promissory note as the adjustment would have a nominal effect upon the total value.

consideration in the form of the cash annuity, a note, and an in-kind annuity, having an approximate total value of $51,000, in exchange for the rights to property having a value of approximately $53,000. It is also noted that the decedent had attempted to sell the property in question outright and was unsuccessful. If the decedent had sold the property in question for the $55,000 sale price she was asking and paid the realtor's usual fee, she probably would have received only about $50,000 for the property. In view of this, the transfer made by the December 9, 1970, contract was in fact a reasonable, arm's-length sale based upon the receipt of adequate consideration.

The defendant asserts that the generation of $17,000 of gross income in 1971 by the property in question would require the elimination of any annuity value for purposes of determining the amount of consideration received. The assertion is based on the reasoning that the income exceeded the yearly payments made under the annuity, and, therefore following *Estate of Stevens, supra,* this fact would negate the giving of a value to the annuity. However, there is a substantial difference between the two income flows. The income flow in *Estate of Stevens* was of an interest-type nature and thus required no additional expenses to acquire the income. In fact, the adoption by *Estate of Stevens* of the logic of *Updike v. Commissioner,* 88 F2d 807 (8th Cir 1937), 37-1 USTC ¶ 9170, 19 AFTR 194, requires that a net income approach be used. In reviewing the income tax returns submitted by the buyers of the subject property for the 1971 year, the income from the property, net of out-of-pocket business expenses, and before subtracting the monthly payments, appears to have been less than $9,400. Out of this sum, there must also be subtracted a reasonable salary for the management and operation of the motel property by the Hickses, and an additional sum to cover the depreciation loss to the prop-

erty, leaving a nominal or, more likely, a negative income flow from the property. Therefore, defendant's contention that the annuity did not constitute any consideration, because the income flow from the property exceeded the annuity payments, is not borne out by the facts in this case.

The Hickses gave consideration for the property that approximated its value, which created a binding contract that determined the succession to the property on December 9, 1970. The effect of the contract was in fact to transfer the "possession and enjoyment" of the property to the transferees. The Hickses took over the full operation of the Cascade City Center Motel on or about January 1, 1971, and enjoyed any income or suffered any losses the property generated. Except for the occupancy of the designated areas, which was part of the consideration for the sale, the decedent relinquished all of her rights to the property, subject to the fulfillment of the requirements in the contract imposed upon the Hickses for prudent security purposes, which were totally beyond the decedent's control.

The court finds that the decedent's transfer of the property in question for full and adequate consideration on December 9, 1970, determined the succession to the property. (*Cf. Goodin et al. v. Cornelius et al.,* 101 Or 422, 200 P 915 (1921), and *Woods v. Dunn,* 81 Or 457, 159 P 1158 (1916).) The mere fact that the bill of sale was held in escrow until decedent's death did not create a taxable succession under ORS 118.010. *See In re Sebree's Estate,* 122 Mont 509, 206 P2d 553 (1949). No additional inheritance tax is payable by plaintiff or the decedent's estate to defendant.

Defendant's Order No. IH 73-4, dated June 25, 1973, is hereby reversed.

Statutory costs and disbursements and reasonable attorney fees are awarded to the plaintiff.