[Civ. No. 14648. Fourth Dist., Div. One. Apr. 22, 1976.]

Estate of WILLIAM F. CORDA, Deceased.
KENNETH CORY, as State Controller,
Petitioner and Respondent, v.
ERNEST CORDA, as Executor, etc., Objector and Appellant.

904

Byrd, Sturdevant, Nassif & Pinney and Charles A. Pinney, Jr., for Objector and Appellant.

Myron Siedorf, Margaret Groscup and Mary L. Harris for Petitioner and Respondent.

## OPINION

COLOGNE, J.— ■ ■■■ Ernest Corda, as executor of the estate of William F. Corda, deceased, appeals after the court below entered an order overruling objections to the report of the inheritance tax referee and fixing the total inheritance tax due.[1]

The referee's report resulted in an order there is inheritance tax due on the value of assets William F. Corda gave to his children and their spouses more than seven years before his death on October 23, 1972.

■ In 1965, William F. Corda, then 74 years of age, made certain agreements among his family members under which he agreed to bargain, sell, convey, and transfer real and personal property,[2] including cash, securities and farm equipment totaling $267,326.80 to his three children and their respective spouses (Transferees). The transfers were

---

[1]An order fixing an inheritance tax is appealable, but an order overruling objections to the report of the inheritance tax referee is not (Prob. Code, § 1240). Accordingly, this appeal as to the latter order is dismissed (see *Estate of Schmalenbach*, 15 Cal.3d 102, 105, fn. 5 [123 Cal.Rptr. 490, 539 P.2d 58]).

[2]The property transferred was of the following nature and valuation:

(a) To Ernest G. Corda and Geraldine Corda, son and daughter-in-law who promised to pay Mr. Corda $6,000 annually:

|   |   |   |
|---|---|---|
| 1. | Real property | $120,000.00 |
| 2. | Farm equipment | 8,000.00 |
|   | Gross value | $128,000.00 |

(b) To Wilma and J. B. Claverie, daughter and son-in-law, who promised to pay Mr. Corda $4,000 annually:

|   |   |   |
|---|---|---|
| 1. | Securities | $ 47,163.12 |
| 2. | Cash | 22,500.00 |
|   | Gross value | $ 69,663.12 |

(c) To Elsie and Raymond D. Claverie, daughter and son-in-law, who promised to pay Mr. Corda $4,000 annually:

|   |   |   |
|---|---|---|
| 1. | Securities | $ 47,163.68 |
| 2. | Cash | 22,500.00 |
|   | Gross value | $ 69,663.68 |

made partly as gifts and partly in exchange for promises by the Transferees to pay Mr. Corda a private annuity. From the promised annuities Mr. Corda was to receive a total of $14,000 per year for his life. No collateral or securities were given for the faithful performance of the annuity promises.

Each Transferee signed a document entitled "Agreement of Private Annuity," reciting, among other things, the transferor, William F. Corda, "is of the belief that he will obtain certain income tax relief by exchanging the said property for a private annuity payable by TRANSFEREE to TRANSFEROR for the balance of his life . . . ." and providing, "TRANSFEREE, in consideration of the said sale, transfer and delivery of the said property, receipt of which is hereby acknowledged, hereby agrees to pay or cause to be paid to TRANSFEROR for and during the terms of TRANSFEROR's natural life," the sum of $6,000 or $4,000 annually, the amount depending on the particular Transferee signing the agreement, payable on or before the first day of May each year. The trial court found there were no express or implied promises of support made by the Transferee to William F. Corda.

William F. Corda filed gift tax returns correctly reporting the value of the gifts transferred under the 1965 agreement, and paid the full gift tax due at the time of the transfer. The State Controller audited the returns and determined the amount of gift tax paid was correct. Computation of the amount of the taxable gift was accomplished by deducting from the gross value of the property transferred to each Transferee the amount of the consideration paid to William F. Corda by each Transferee for the private annuities.[3] The order fixing inheritance tax credited each Transferee with the amount of gift tax paid in 1965, deducting that amount from the amount of inheritance tax found due (Rev. & Tax. Code, § 14059).

[3]The amount of consideration paid was determined by using the valuation tables for annuities contained in Revenue and Taxation Regulations sections 13952-13954(1) on the date of the transfer, and resulted in the following:

(a)    Ernest and Geraldine Corda:

| | |
|---|---:|
| Gross value of gifts | $128,000.00 |
| less ($6,000 × 5.18402 annuity value) | 31,104.12 |
| Taxable gifts | $ 96,895.88 |
| Gift tax due and paid: | |
| Ernest (on $44,447.94 gift) | $ 983.44 |
| Geraldine (on same amount) | $ 3,324.79 |

At the date of the transfer William F. Corda divested himself of all of his interest in the property transferred. He retained an estate of more than $102,000 over and above the property transferred for the private annuities and the gifts.

The Transferees had no obligation, express or implied, to make the annuity payments from the property transferred to them. Each Transferee had adequate independent means of his own to make the annuity payments without recourse to the income generated by the property transferred. After the date of the transfer, the income from the real property and farm equipment was at least equal to the amount of the annual annuity from Ernest Corda; and after the date of the transfer, the cash and securities did produce some interest and dividend income.

The inheritance tax referee calculated the inheritance tax by deducting the present value (value at the time of the transfer) of estimated or potential income the properties would produce from the present value of the annuity which the Controller earlier approved for gift tax purposes. The values of potential income from the property transferred were, respectively, $27,695.72, $18,040.39 and $18,040.39. Thus, Ernest and Geraldine Corda were credited, for inheritance tax purposes, with having paid consideration of $3,408.40 instead of the $31,104.12; Wilma and J. B. Claverie were credited with having paid $2,695.69 consideration instead of the $20,736.08; and Elsie and Raymond Claverie were credited with the same consideration figures as Wilma and J. B. Claverie.

(b)  Wilma and J. B. Claverie:

| | |
|---|---|
| Gross value of gifts | $ 69,663.12 |
| less ($4,000 × 5.18402 annuity value) | 20,736.08 |
| Taxable gifts | $ 48,927.04 |
| Gift tax due and paid: | |
| Wilma (on $22,310.05 gift) | $ 346.20 |
| J. B. (on same amount) | $ 1,218.60 |

(c)  Elsie and Ray Claverie:

| | |
|---|---|
| Gross value of gifts | $ 69,663.12 |
| less ($4,000 × 5.18402 annuity value) | 20,736.08 |
| Taxable gifts | $ 48,927.04 |
| Gift tax due and paid: | |
| Elsie (on $22,310.05 gift) | $ 346.20 |
| Ray (on same amount) | $ 1,218.60 |

The court below determined the transfers were not for an adequate and full consideration in money or money's worth within the meaning of Revenue and Taxation Code section 13641[4] and were subject to the inheritance tax under Revenue and Taxation Code[5] sections 13641 to 13648, inclusive, based on the lower consideration figures.

Neither the taxing authorities nor the trial court identified the specific provisions under which the transferred property was made subject to the inheritance tax and there is considerable argument in the briefs with respect to the application of various sections. However, as in *Estate of Stevens,* 163 Cal.App.2d 255 [329 P.2d 337], also involving a transferee's promise in connection with a transfer to pay a private annuity to the transferor, it is not necessary to make a section-by-section analysis to resolve this question. Here the transfer quite clearly is one under which each transferee, by virtue of the private annuity agreement, "promises to make payment to . . . the transferor."[6] Each transferee expressly stated he agreed "to pay or cause to be paid to TRANSFEROR" the named sum annually for the transferor's life. Accordingly, the transfers fall within section 13645 if they otherwise conform to section 13641, i.e., if they were not for full and adequate consideration (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 270-272).

The issue thus narrows to whether the court below properly found the consideration paid to William F. Corda for the transfers in exchange for the private annuities was not "adequate and full" and, accordingly, that these were transfers "conforming to Section 13641" (§ 13645).

*Estate of Stevens, supra,* 163 Cal.App.2d 255, is not distinguishable in principle and provides authority for the court's action here. There

---

[4]Revenue and Taxation Code section 13641 provides: "13641. If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money's worth, but the transfer was not a bona fide sale for an adequate and full consideration in money, or money's worth, the amount of the transfer subject to this part shall be the excess of

"(a) The value, at the date of the transferor's death, of the property transferred, over

"(b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred."

[5]Unless otherwise identified all references in the opinion are to the Revenue and Taxation Code.

[6]Section 13645 provides: "13645. A *transfer* conforming to Section 13641 and *under which the transferee promises to make payments to* or care for *the transferor* is a transfer subject to this part [the Inheritance Tax Law]." (Italics added.)

Florence R. Stevens, at the age of 73, deeded three parcels of income-producing real property to her daughter Kathryn in 1935. At the same time Kathryn and her mother signed an agreement by which Kathryn agreed to pay her mother for the term of the mother's life the sum of $600 per month and assumed the obligation to pay the balance of $34,000 encumbering the property. The mother and daughter agreed the value of the transferred property was $121,000 after deducting the $34,000 encumbrance, and the value of the annuity was $75,000. The agreement stated the difference between $121,000 and $75,000 ($46,000) was an outright gift. Kathryn contemporaneously placed an undivided one-half interest in the property into a trust for the benefit of another daughter, reserving $300 (one-half of the promised $600) of the trust income for payment of the annuity. The mother died almost 20 years later and the trial court, looking to the total annuity payments actually made to the mother ($140,400) and the payment of the encumbrance ($34,000), found the transfer was for full and adequate consideration ($174,000 actually paid for property worth $155,000 at time of transfer).

The Court of Appeal reversed, following the rule the adequacy of the consideration must be determined as of the date of the transfer (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 266), and holding, among other things, there was a single transaction involved in the transfer and agreement. The transaction was simply one in which the transferor transferred the entire property to the transferee, and received back as consideration the transferee's agreement to pay the transferor $600 per month for life (*Estate of Stevens, supra* at p. 268). The court concluded the total consideration given was $109,000 ($75,000 the value of the annuity as found by the trial court based on substantial evidence, plus $34,000 encumbrance assumption) for transferred property having a value of $155,000 at the time of the transfer, and thus was not full and adequate consideration under section 13641 (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 268-269).

In reaching this conclusion the Court of Appeal in *Stevens* considered the propriety of the trial court's having included the total annuity payments actually made over the transferor's life as elements of the consideration for the transfer. The *Stevens* court assumed, but did not decide, it was proper to consider the total amount of annuity payments in determining whether the transfer was for adequate and full consideration. It held, however, that if actual payments over the life of the annuitant are considered, it is error to do so without also deducting from the annuity payments the net income from the transferred property

received by the transferees over the same period, ". . . or at least without making adjustment and deduction for the income which the transferor might normally have been expected to have received from the transferred property or on its commuted value." (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 264.)

The court in *Stevens* placed reliance on *Updike* v. *Commissioner of Internal Revenue,* 88 F.2d 807, 813 and *Fidelity Union Trust Co.* v. *Martin,* 118 N.J.L. 277 [192 A. 74, 80], quoting the following rule in the latter case: ". . . consideration of adequate financial value is the amount by which the sum agreed to be paid annually exceeds the sum which the donor would normally receive on the fund commuted as of the date of the instrument of transfer." (*Fidelity Union Trust Co.* v. *Martin, supra,* 192 A. 74, 80.)

The reason for the rule is disclosed in the *Updike* case in which, under a gift in contemplation of death situation causing estate taxation of the transferred property (see § 13642 for similar inheritance tax provision), the court pointed out that the father's estate would have been taxed for the entire value of the transferred property had he kept the property until his death, and stated: "That being the situation, why should the tax be less where he has transferred in contemplation of death and the transferee in substance has agreed to collect the income and pay it back to him in the form of an annuity? . . . [T]he value of the transferred property at the time of the decedent's death was not diminished by the fact that there had been paid back to him in the form of an annuity an amount substantially equal to the income derived from [the transferred] property. . . . To regard such an annuity as consideration would lead to absurd consequences." (*Updike* v. *Commissioner of Internal Revenue, supra,* 88 F.2d 807, 813.)

The *Stevens* court concluded on this issue, first, that an annuity cannot be regarded as consideration for a transfer where the income derived from the transferred property is substantially equal to the amount of the annuity and, second, that where the transferred property produces income although not equal to the amount of the annuity there is no consideration to the extent of the income derived from the transferred property (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 265).

There is nothing in the facts of the case at bar to distinguish it from the rationale and rule of the *Stevens* case. Here, looking realistically at what economic benefits are in fact shifted by the questioned transfer (*Estate of*

*Stevens, supra,* 163 Cal.App.2d 255, 268), we find a single transaction under which contemporaneously executed documents provide for gifts of income-producing property to the transferees and for their promises to make annuity payments back to the transferor. This is exactly what occurred in the *Stevens* case. A failure to make the transfer subject to the inheritance tax would violate the declared legislative intent to subject to the inheritance tax law "every transfer made in lieu of or to avoid the passing of property by will or the laws of succession." (§ 13648.)

Where property value is brought back into the estate for inheritance tax purposes, the state's interest is to obtain the revenue as if no gift were made. Where, for the gift tax, the present value of the lifetime private annuity is deductible and the property value is later brought back into the estate for inheritance tax purposes, allowance of the identical deduction for the annuity, to the extent of the annuity's present value, defeats the declared policy of making every transfer in lieu of or to avoid the passing of property by will or the laws of succession subject to the inheritance tax (§ 13648; see *Estate of Bielec,* 8 Cal.3d 213, 219-220 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088]). It is thus necessary for inheritance tax purposes, looking at the consideration from the standpoint of the date of the transfer, to place a present value on the income-producing capability of the property. For purposes of determining the amount of consideration at the time of the transfer the present value of the expected income must be compared with the present value of the annuity. If the present value of the expected income is less than the annuity's present value, the difference represents the real present cost of the annuity to the transferee (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 265). It is only to this extent that consideration is recognizable for purposes of the inheritance tax.

This is precisely what the court below accomplished. While the executor here seeks to establish there is no beneficial succession to the property under the rule that in determining inheritance tax liability beneficial succession is the measure (*Estate of Rath,* 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836]), for purposes of sections 13641 through 13648, there is beneficial succession to the extent that the annuitant's death has removed the obligation to pay the annuity. At the death there is no longer any possibility income produced from the transferred property may be used to fulfill the annuity obligation. The promise to make payments to the transferor creates the possibility of use of the income from the property. This promise brings the transfer back into the estate for inheritance tax purposes (§ 13645) if the consideration is not

adequate and full (§ 13641). The release by the transferor's death of the possibility, created from this promise, of using the income is sufficient to conclude there is a beneficial succession (see *Estate of Madison,* 26 Cal.2d 453, 457 [159 P.2d 630]). In this connection, in *Estate of Hyde,* 92 Cal.App.2d 6, at page 19 [206 P.2d 420], the court said: ". . . the modern, proper, and realistic view is that where a transfer is made to a charitable institution [or child] subject to an agreement to pay yearly to the donor for life a specified sum approximating the income earned by such fund, the transfer is subject to the tax because it is apparent that the full enjoyment of the fund cannot be realized by the charity until the obligation to make the payments ceases—i.e., upon the death of the donor. Even though the transfer is in form absolute and the obligation to pay the yearly stipend in form is independent, the transfer is taxable. This is so because, even though the particular funds contributed may be expended for the general purposes of the charity (that is not so in the instant case), it is apparent that, from a practical standpoint, the charity must either use the donated funds or tie up an equivalent sum from other sources in order to realize the income to pay the donor. . . ."

The same principle applies to any transferee who promises to pay an annuity to the transferor. Thus, under the *Hyde* case rule quoted above the presence of other property from which payment of the annuity could be made is of no consequence in determining either the adequacy of consideration or whether the transfer is otherwise within section 13645.[7]

The executor's reliance on *Estate of Howe,* 31 Cal.App.3d 949 [107 Cal.Rptr. 766], is of no assistance since the only issue there was whether substantial evidence supported the trial court's decision, based on stipulated facts as to value, that there was full and adequate consideration for the transfer which otherwise was similar to the transfer in this case. On review of the record of the stipulated facts with which it was bound, the Court of Appeal in *Howe* held the trial court's decision was supported by substantial evidence. A crucial fact stipulated in that case was an insurance company statement that a single premium life annuity

[7]The executor relies on the following statement in *Estate of Hyde, supra,* 92 Cal.App.2d 6, 15: "While it is, of course, true that the money paid over for the purchase of an annuity is not taxable under an inheritance tax statute such as ours, for the obvious reason that such a transfer is not intended to take effect in possession or enjoyment at or after death, for this rule to apply, the transfer must involve the purchase of an annuity and not the making of a gift. Moreover, in the purchase of an annuity the consideration paid the annuitant is adequate. . . ."

Section 13645 was not considered in *Hyde* because it was enacted after the transfers under review in *Hyde* had been made (see *Estate of Stevens, supra,* 163 Cal.App.2d 255, 270-271). Thus, the executor's reliance on this statement is misplaced.

of $120,000, the value of the property transferred, for a person of the transferor's age would produce a monthly income of $735.59, the identical amount which the transferees promised to pay to the transferor.

Order affirmed.

Ault, Acting P. J., and Whelan, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.