MARIAN L. SCHROEDER, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF ARTHUR F. SCHROEDER, DECEASED, AND ATLAS REFINERY, INC., APPELLANTS-PETITIONERS, v. HOMER C. ZINK, COMMISSIONER, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF TREASURY, RESPONDENT.

Argued December 5, 1949—Decided February 6, 1950.

2 

─────────

4

6

Mr. *Ralph E. Lum, Jr.*, argued the cause for the appellants (*Messrs. Lum, Fairlie & Foster,* attorneys).

Mr. *William A. Moore* argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

ACKERSON, J. This appeal involves the applicability of the Transfer Inheritance Tax Act, *R. S.* 54:34–1(c), to the transfer of corporate stock under the circumstances disclosed by the following stipulated facts. On July 23, 1937, Arthur F. Schroeder and his brother, Leslie, were officers of and the principal stockholders in a New Jersey corporation known as Atlas Refinery (hereinafter referred to as the Refinery). Each brother owned a total of 527 shares of the common stock of that company out of a total of 1,095 then outstanding. Arthur was then forty-three years of age, Leslie was thirty-eight, and both were in good health. On that date they entered into an agreement in writing whereby each bound himself to sell to the corporation, through his executor or administrator, at his death, and the company bound itself to buy 250 shares of his stock at $100 per share. The stock then had a market value of less than $100 per share. Payment for said shares was to be made from the proceeds of insurance policies taken out by the Refinery on the lives of the brothers.

Arthur F. Schroeder died testate on April 2, 1947, nearly ten years after making the agreement, having retained his 527 shares of which 277 passed by his will to his wife and son and the remaining 250 were delivered to the Refinery by his executrix pursuant to the aforesaid contract at the agreed price of $100 per share, totaling $25,000.

The Transfer Inheritance Tax Bureau thereupon levied an inheritance tax against the beneficiaries under decedent's will on the $25,000 thus received for the 250 shares of stock acquired by Refinery under the aforesaid contract, and at the same time assessed the remaining 277 shares passing to the beneficiaries under the will on the basis of $420 per share which, it is stipulated, was its fair market value on the date of the decedent's death. These assessments were paid without dispute.

The Bureau also levied a transfer tax against Atlas Refinery based on the difference of $320 per share between the contract price of $100 per share and the fair market value

of the other common stock, *i. e.*, $420 per share. This difference, amounting to $80,000, was assessed under *R. S.* 54:34-1(c) on the theory that it was a transfer, to that extent without consideration, "intended to take effect in possession or enjoyment at or after such death." The tax thereon, amounting to $6,400, was paid with interest by Refinery under protest and on appeal this assessment was affirmed by the Appellate Division of the Superior Court whose judgment is brought here for review on certification granted pursuant to *Rule* 1:5-2 on application by the executrix of the aforesaid estate and the Refinery. The validity and enforceability of the contract involved is not in issue. We are concerned only with the validity of the tax imposed upon the transfer of the stock to the Refinery as hereinabove described.

The appellants contend that the transfer of the stock to Refinery is not a taxable transfer within the intendment of the applied statute, *R. S.* 54:34-1(c). They argue that the statute is restricted in operation to transfers that are substitutes for testamentary dispositions and this transfer is not of that character. Further it is said that the transaction in question was performed for a full and adequate consideration, and therefore, in the absence of a donative element, is not taxable. It is also argued that the effect and operation of the contract and the adequacy of the consideration supporting it are to be tested under the circumstances existing in 1937 when the contract was made and not in the light of subsequent events.

*R. S.* 54:34-1 and 1(c) impose a tax on all *inter vivos* transfers of a resident's property of the value of five hundred dollars or over, in trust or otherwise (except those specifically exempted by *R. S.* 54:34-4) passing "by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or *intended to take effect in possession or enjoyment at or after such death*" (italics supplied). *R. S.* 54:33-1 defines the term "transfer" as including "the passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution

by statute, descent, devise, bequest, grant, deed, bargain, sale or gift."

It must be remembered that the assessment here involved is not based upon the theory of an *inter vivos* gift made in contemplation of death, but upon the alternative theory expressed in the statute of a transfer "intended to take effect in possession or enjoyment at or after such death." The test for determining when a transfer takes effect in order to fall within the latter theory for taxing purposes is whether possession or enjoyment of the property is intended to take effect at or after the transferor's death, irrespective of the time when title is to vest. The important question is "whether the shifting of the possession and enjoyment of the subject matter of the succession is dependent upon the settlor's death. Is his death a determinative factor in the devolution of the possession and enjoyment of the estates granted?" *Hartford v. Martin,* 122 *N. J. L.* 283, 287 (*E. & A.* 1938). The thing taxed under our transfer inheritance tax statute is the transfer of the interest or property withheld from possession and enjoyment until the transferor's death. *Avery v. Walsh,* 138 *N. J. Eq.* 80, 88 (*Prerog.* 1946); *In re Hollander,* 123 *Id.* 52, 57 (*Prerog.* 1938); *Koch v. McCutcheon,* 111 *N. J. L.* 154, 156 (*Sup. Ct.* 1933); *Hartford v. Martin, supra; Note:* 6 *A. L. R.* 2d 223 *et seq.* In this view there can be no doubt that the present transfer took effect in possession and enjoyment at or after Arthur Schroeder's death.

The broad purpose of the statute is to tax successions at death. It will be noted that the language used is broad enough to include such transfers made in exchange for a consideration of equal value received by the transferor. From the history and purpose of the legislation, however, it is obvious that it was not intended to tax transfers of that kind, even though made in contemplation of death or intended to take effect at death. The result of such transfers, at full value, would in nowise defeat the statutory purpose; the estate would not be depleted but merely changed in form. So by necessary implication such transfers have been excluded

from the operation of the statute, and the principal reason for so doing is that by such transfers the estate of the transferor is not depleted. *In re Kraft,* 103 *N. J. Eq.* 543, 546 *et seq. (Prerog.* 1928); *Hartford v. Martin, supra, p.* 287; *Note:* 157 *A. L. R.* 965, 979. Obviously, then, it is only when an adequate valuable consideration of substantially equal value to the property transferred is received by the transferor, that the transfer intended to take effect at his death is not taxable. *In re Kraft, supra, p.* 548; *In re Deutz,* 105 *N. J. Eq.* 671 *(Prerog.* 1930); *Hartford v. Martin, supra.*

It follows as a natural corollary of the foregoing principles that, to the extent the consideration paid for a transfer intended to take effect at or after the death of the transferor is "inadequate" in value as compared to the value received, the excess is tantamount to a gift and deemed donative in nature. Therefore, since there is a succession thereto at death, it is regarded as a substitute for a testamentary disposition and taxable. *In re Deutz, supra, p. 677. Cf. Hartford v. Martin, supra, p.* 287; *Hagy v. Kelly,* 135 *N. J. Eq.* 436, 446 *(Prerog.* 1944); *In re Kraft, supra; Fidelity Union Trust Co. v. Thayer-Martin,* 118 *N. J. L.* 277, 288 *(Sup. Ct.* 1937); affirmed, 119 *Id.* 426 *(E. & A.* 1937); *In re Huggins,* 96 *N. J. Eq.* 275, 282 *(Prerog.* 1924); affirmed, *sub nom. Fairleigh v. Bugbee,* 3 *N. J. Misc.* 1072 *(Sup. Ct.* 1925); affirmed, 103 *N. J. L.* 182 *(E. & A.* 1926); *In re Hollander, supra, p.* 58; 28 *Am. Jur. (Inheritance, Estate and Gift Taxes),* § 184, *p.* 98.

It is not necessary, as the appellant suggests, in transfers of this type, that there be a donative *intent* when the contract is made; the statute is not so phrased; it reaches all transfers (except those specifically exempted) made to take effect in possession or enjoyment at or after the death of the transferor to the extent that they are not supported by a full and adequate consideration. *In re Deutz, supra; Hartford v. Martin, supra.* A contrary interpretation would furnish an easy method for evading the legislative purpose. That the statute is not confined to transfers which are wholly donative in character is further evidenced by the inclusion

therein of transfers "by deed, grant, bargain, sale" to take effect at or after the death of the "grantor, vendor or donor." The class of taxable transfers includes those accomplished by contract since they fall within the statutory scope of a "bargain" or "sale." *In re Gemmell,* 123 *N. J. Eq.* 315, 320 *(Prerog.* 1938) ; *In re Deutz, supra, p.* 677; *In re Huggins, supra.*

In taxing *inter vivos* transfers the substance rather than the form of the transfer controls. *Hartford v. Martin, supra, p.* 286. *In re Gemmell, supra, p.* 320; *Squier v. Martin,* 131 *N. J. Eq.* 263, 268 *(Prerog.* 1942) ; *Avery v. Walsh, supra, p.* 84. So it has been held that the statute is concerned with the net substantial result of the entire transaction, *In re Huggins, supra* (96 *N. J. Eq.* 275, 281). As expressed in *In re Kellogg,* 123 *N. J. Eq.* 322, 324 *(Prerog.* 1938), "that which is material and all-important is whether the thing which has been done, amounts in substance to the thing which the Legislature has made taxable,—not whether the thing which has been done has in substance accomplished the purpose of the transferor."

It is important, therefore, to notice that the agreement before us is a contract "to sell" the stock of the particular owner within thirty days after his death through the medium of his executor or administrator, and therefore the transfer, in the language of the statute, was intended to take effect "after such death." During his lifetime Arthur Schroeder held title to the stock and enjoyed the voting privileges and dividends which attached to such ownership. It is obvious that while he was obliged to hold the stock until his demise, the possession and enjoyment of such rights and privileges—which is the subject taxed—were not transferred at the time of the execution of the agreement in 1937. Death imperatively measured the time of transfer, and therefore cases where the transfer could be demanded, pursuant to the agreement, during the lifetime of the transferor, as in *Grell v. Kelly,* 134 *N. J. Eq.* 593 *(Prerog.* 1944) ; mod., 132 *N. J. L.* 450 *(Sup. Ct.* 1945), are of no precedential value here.

The net result of the transaction under review is that the Refinery has succeeded to the possession and enjoyment of stock by a transfer intended to and actually taking effect after the death of the owner for a price far below its actual worth. The transfer thus becomes an effectual substitute for a testamentary disposition, in that there was a succession after death without adequate consideration. If the excess value goes untaxed, the corporation will have succeeded to it without the burden ordinarily imposed upon the right to such succession. Certainly the bargain made ten years before could not defeat the statutory policy.

We are thus drawn to the conclusion that the transfer in the instant case comes within the scope of *R. S.* 54:34–1 (c) as a "bargain" or "sale" intended to take effect in possession and enjoyment at or after the death of Arthur Schroeder, and to the extent that the consideration therefor is inadequate, it is tantamount to a gift and taxable.

The appellants also contend that a value of stock which has been fixed by a valid and enforceable contract which is binding upon the parties is equally binding for the purpose of taxation. In other words, it is insisted that the price of the stock fixed by the contract was not affected by a subsequent increase in the value of the stock not subject to the contract.

The mandate contained in the applicable statute is that the tax shall be computed upon the "clear market value" of the property transferred and that the tax commissioner shall appraise such property at its "fair market value." *R. S.* 54:34–5 and 9; *Grell v. Kelly,* 132 *N. J. L.* 450, 451 (*Sup. Ct.* 1945); *Montclair Trust Co. v. Zink,* 141 *N. J. Eq.* 401, 411 (*Prerog.* 1948); *Spalding v. Thayer Martin,* 119 *Id.* 603, 604 (*Prerog.* 1936). It has been stipulated that the fair market value of the common stock, other than that covered by the agreement, was $420 per share as of the time of Arthur Schroeder's death.

Manifestly, to permit the parties to the agreement before us to fix therein the value of the property to be taxed would be contrary to the avowed legislative policy. As

already observed the tax is based upon the right or privilege of the legatees, distributees or transferees to receive or succeed to the full possession and enjoyment of the property. Consequently, *inter vivos* transfers of property intended to take effect at or after death, are to be taxed upon the valuation of the property as of the date of the transferor's death. *In re Hartford,* 122 *N. J. Eq.* 489, 499 (*Prerog.* 1937); affirmed, *sub nom. Hartford v. Marlin,* 120 *N. J. L.* 564 (*Sup. Ct.* 1938); affirmed, 122 *Id.* 283 (*E. & A.* 1938); *Wimpfheimer v. Martin,* 126 *Id.* 502, 505 (*Sup. Ct.* 1941); *Nicholas v. Martin,* 127 *Id.* 35, 36 (*Sup. Ct.* 1941); affirmed, *Ibid., sub nom. Rutgers v. Martin,* 603 (*E. & A.* 1941); 28 *Am. Jur.* (*Inheritance, Estate and Gift Taxes*), § 224, *p.* 114; *Note:* 160 *A. L. R.* 1059. Of course, where a consideration has been received which is less than the value so ascertained, the tax is leviable only on the difference. *Hagy v. Kelly, supra, p.* 446; *In re Deutz, supra; Fidelity Union Trust Co. v. Thayer-Martin, supra, p.* 288.

▮ In this connection it is argued that the maximum price for which the stock could be sold under the agreement at the death of the owner was $100 per share and that such price constitutes its market value. The federal and New York cases cited by appellants in support of this contention are not helpful for they are concerned with a different principle of taxation than is involved herein. *Turner v. Cole,* 118 *N. J. Eq.* 497, 500 (*E. & A.* 1935); 28 *Am. Jur.* (*Inheritance, Transfer and Gift Taxes*), §§ 3–5, *pp.* 8–10. In any event they are not controlling in the interpretation of our local statute, *Creasey v. Zink,* 140 *N. J. Eq.* 111, 117 (*Prerog.* 1947); *Squier v. Martin, supra, p.* 269.

▮ An agreement fixing the value of property or declaring that it has no value would be contrary to express legislative policy, as hereinabove observed, and cannot preclude the State from taxing its actual value. *In re Deutz, supra, p.* 674; *Note:* 5 *A. L. R.* 2d 1122 *et seq.* The actual value of the stock in question is its intrinsic or "fair market value" which has been defined as "the fair value as between one who desires but is not compelled to buy and one who is

willing but not compelled to sell." *Spalding v. Thayer Mar-lin, supra, p.* 605. Such an agreement, at most, is merely a factor to be taken into consideration in determining fair market value, but does not axiomatically fix such value. *In re McLure's Estate,* 347 *Pa.* 481, 32 *A.* 2d 885, 887 (*Pa. Sup. Ct.* 1943); *Commissioner of Corps., etc., v. Worcester County Trust Co.,* 305 *Mass.* 460, 26 *N. E.* 2d 305 (*Mass. Sup. Jud. Ct.* 1940). To accord a binding effect to the *ante mortem* value set in the agreement before us would necessarily oust the tax appraiser of his statutory duty to appraise the property transferred at its "fair market value," *R. S.* 54:34–9. Such construction would open the door to tax evasion and frustration of the clear legislative mandate. *Cf. In re Hartford, supra,* 498.

█ We conclude that the tax under review is valid and the judgment below is affirmed for the reasons herein expressed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—None.