[Civ. No. 6503.   Fourth Dist.   Apr. 21, 1961.]

Estate of MAE F. CRAYCROFT, Deceased. ALAN CRANSTON, as State Controller, Appellant, v. KENNETH TOBIN CRAYCROFT et al., as Executors, etc., Respondents.

438

James W. Hickey, Chief Inheritance Tax Attorney, Joseph D. Lear, Assistant Chief Inheritance Tax Attorney, and Francis J. Muldoon, Assistant Inheritance Tax Attorney, for Appellant.

Avery, Meux & Gallagher and Kenneth G. Avery for Respondents.

COUGHLIN, J.—This is an appeal from an order sustaining objections to the report of an inheritance tax appraiser and fixing the inheritance tax in an amount $4,056.56 less than that recommended in such report.

The primary issues on appeal require the interpretation of a partnership agreement and concern the effect of that agreement on the amount of inheritance tax payable upon the death of one of the partners.

May F. Craycroft died testate on October 26, 1957, leaving the bulk of her estate, appraised at $667,894.60, to her son and daughter. At the time of her death, Mrs. Craycroft, her son and her daughter were members of a partnership doing business under the name of Craymont Company. The inheritance tax appraiser, in his report filed with the court, appraised the interest of Mrs. Craycroft in this partnership at $210,793.68. The son and daughter objected to this part of the report, contending that the interest in question should have been appraised at $146,268.49. After a hearing, the court upheld this contention and fixed the tax accordingly, finding that Mrs. Craycroft, her son and her daughter had entered into a partnership on January 1, 1955, for the purpose of investing in and holding stocks and bonds; that the terms and conditions under which this partnership had been conducted since that time were set forth in a written agreement of partnership executed on October 25, 1956; that this agreement provided for termination of the partnership upon the death of any partner and required the remaining partners to pay to the estate of the deceased partner a sum representative of profits for the current year fixed in accordance with a prescribed formula and to deliver to the estate a promissory note in a sum equal to the share of the contribution made by the deceased partner plus the amount of undrawn credits payable to that partner, as reflected by the books of the partnership at the time of death; that the amount of profits

so payable was $6,795.39; that the amount of said promissory note was $139,473.10, consisting of capital contributions in the sum of $132,310.14 plus unpaid credits in the sum of $7,162.96, both as shown on the books of the partnership; that the total of these amounts, i.e., $146,268.49 is the amount which Mrs. Craycroft's estate was entitled to receive from the surviving partners in full settlement of her interest in the partnership; that the inheritance tax appraiser appraised this interest at $210,793.68; that this appraisal was based on the percentage interest of Mrs. Craycroft in the partnership and the market value of the stocks and bonds held by the partnership at the time of her death; that the difference between the value of the decedent's interest in the partnership as fixed by the appraiser and as found by the court is attributable to the difference in the method of determining such value; that such difference, i.e., $64,525.19, is due to the fact that the appraiser considered the date-of-death market value of the shares of stock which constituted a part of the partnership assets instead of the book value of those shares as reflected in the deceased partner's capital account; that the excess in value of the partnership assets over the book value of the decedent's partnership interest, viz., the sum of $64,525.19, "came into the possession and enjoyment of the surviving partners upon the death of the decedent pursuant to the terms and provisions of said partnership agreement"; and that the "partnership agreement, on the date it was entered into, was made for a valuable and adequate consideration received and given by each party to the agreement."

The record before us supports the conclusion that between the years 1931 and 1955 stocks and bonds were issued to Mrs. Craycroft and her son and to Mrs. Craycroft and her daughter as joint tenants; that these three people transferred their interest in these stocks and bonds to the partnership and agreed that the value thereof as shown on the partnership books should be the price paid therefor, which was referred to in the testimony as the historical cost thereof; and that the capital contribution of each partner as of the date of the commencement of the partnership should be reflected in the books of the partnership in an amount equal to the interest of that partner in the historical cost of the stocks and bonds so transferred.

The partnership books were set up by a certified public accountant named Hill, who, on January 5, 1956, made a work sheet, hereinafter referred to as the "Hill Work Sheet," which

listed various stocks and bonds theretofore contributed to the partnership; set forth the historical cost thereof; prorated the interest of each partner therein; and described that interest in dollar terms which, for· book purposes, constituted each partner's contribution to the partnership.

On October 25, 1956, the partners executed a written agreement of partnership which referred to an attached schedule describing the existing assets of the partnership; included the stocks and bonds in the "Hill Work Sheet" as well as others; set forth the cost price thereof; and noted the percentage interest of each partner in the partnership as of that date.

This agreement provided that the scheduled assets were contributed to the partnership in the proportions set forth therein; that each partner should have the right to make further capital contributions or might withdraw a portion of the capital contributed; that upon the death, insanity, insolvency or voluntary withdrawal of one of the partners the partnership would terminate as to that partner without liquidation but would remain in effect as to the remaining partners; that upon such termination the remaining partners would make a settlement for the interest of the nonremaining partner in the manner therein prescribed; that in the event the termination occurred because of the death of one of the partners, the remaining partners should pay to the estate of the deceased partner a sum equal to the profits of the partnership for the current year, determined in accord with a prescribed formula, and execute a promissory note payable to the administrator or executor of the estate of the deceased partner in an amount "equal to the contribution of said deceased . . . partner to the capital of the partner[ship], plus the amount of any undrawn sums credited to his or her capital account, as reflected by the books of the partnership at the close of the month in which the event occurred"; and that the sum "required to be paid, and the aforesaid promissory note required to be delivered . . . shall be deemed to be the full value of the deceased . . . partner's interest in the partnership on the date on which the event occurred, and upon the payment of the said sum and the delivery of said promissory note, all of the specific partnership property shall vest absolutely in the remaining partners as co-tenants in partnership."

■ Relying upon the rule that an accounting by the partners is governed by the partnership agreement and, in the event this agreement provides a method for computing the value of the interest of a deceased partner and directs that the

surviving partners shall acquire that interest upon payment of the amount determined through such computation, the estate of the deceased partner may not recover from the surviving partners any greater amount regardless of the actual value of that interest (*Epperson* v. *Rosemond,* 100 Cal.App.2d 344, 346 [223 P.2d 655, 224 P.2d 480]), the respondents, the son and daughter, claim that the estate of their mother is entitled only to the value of her interest in the partnership as fixed by the partnership agreement, which includes an amount equal to the profits for the current year, the undrawn sums credited to her account and her capital contributions as shown on the books of the partnership; that the inheritance tax appraiser ignored these provisions of the partnership agreement; that his appraisal was based on the deceased's capital contribution percentage of the market value of the assets of the partnership at the time of death; that the estate was not entitled to recover from the surviving partners on the latter basis; and, therefore, the appraisal was incorrect.

The appellant, the State Controller, claims that in determining the value of a deceased partner's interest pursuant to the partnership agreement in question, the amount of the contributions made is not limited to that shown on the books of the partnership; that the limiting language of the partnership agreement which reads, "as reflected by the books of the partnership" refers to the item of "undrawn sums credited to his or her capital account" and not to the item of "a sum equal to the contribution of said deceased"; that the "contribution" of a deceased partner includes the interest of that partner in the stocks and bonds contributed to the partnership; and the value of that interest should be determined as of the date of death. The trial court rejected this interpretation. We agree with that court. The capital contribution of each partner, under their agreement, is a fluctuating amount; was subject to the addition or subtraction at will. At the time of her death the proportionate interest of Mrs. Craycroft, based on contributions to capital as reflected in the books of the company was 47.10 per cent; when the partnership agreement was executed on October 25, 1956 that interest was listed therein as 47.29 per cent; and on the "Hill Work Sheet," which he testified was reflected in the books of the company, that interest, by calculation, was 49.56 per cent. The contested appraisal figure was "47 and a fraction" per cent of the value of all partnership assets as of date of death. In each instance, the data relied upon to determine the percentage interest of

the deceased came from the books of the company and the determination so made was based on the book value of the contributions considered. Also, it should be noted that the disputed provisions of the agreement did not refer to the deceased's proportionate share of the contributions made to the partnership but to the deceased partner's "contribution"; of necessity, the contribution of the deceased partner was made in the past and bears no relation to the value at the time of death; and as a consequence, an appraisal theory of an interest fixed by a partnership agreement which relates past contributions to present values is unsound. Furthermore, the agreement in question recognizes that the prescribed formula is based on an artificial rather than the actual value of a deceased partner's interest, because it expressly directs that the amount determined in accord with the method prescribed "shall be deemed to be the full value" of that interest. If the parties had contemplated the use of actual value, as distinguished from book value, there would have been no need for the provision *deeming* the required payment to be the "full value" of the deceased partner's interest. The partnership books carried a capital contribution account for each partner; the amount of this account and its relation to the contribution of other partners varied; the original contributions were entered in an arbitrary amount upon which they agreed, i.e., the historical cost of the stocks and bonds transferred; subsequent entries conformed to the amount actually contributed; and it is reasonable to conclude that the clause in the partnership agreement "as reflected by the books of the partnership," which is a part of the prescribed method to determine the amount to be paid for a deceased partner's interest, refers to the "contribution" of such a partner as well as to the undrawn sums credited to that partner.

The appellant contends that even though the trial court was correct in its interpretation of the partnership agreement; and even though the estate of Mae Craycroft was entitled only to the payment of $6,795.39 in cash, and the receipt of a promissory note in the sum of $139,473.10, nevertheless, the order reducing the recommended inheritance tax by $4,056.56 was error, because the participation of the decedent in the partnership agreement under consideration and her assignment to the partnership of her interest in stocks and bonds theretofore held in joint tenancy constituted a transfer to her son and daughter without a valuable consideration made with the intention that it take effect in

possession or enjoyment after death, and was taxable as such under the provisions of sections 13641 and 13643 of the Revenue and Taxation Code.

As heretofore noted, the trial court found that the ''excess in the value of said partnership assets over the book value of the decedent's partnership interest in the amount of $64,525.19 came into the possession and enjoyment of the surviving partners upon the death of the decedent pursuant to the terms and provisions of said partnership agreement'' and that ''said partnership agreement, on the date it was entered into, was made for a valuable and adequate consideration received and given by each party to the agreement.'' In its conclusions of law the court stated that this was not a ''taxable inter vivos transfer.''

In determining inheritance tax liability, beneficial succession is the measure (*Estate of Rath*, 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836]); the substance rather than the form of the transfer controls (*Estate of Stevens*, 163 Cal. App.2d 255, 268 [329 P.2d 337]); the character of the interest created by the transfer rather than the intention of the grantor is the determinative factor (*Estate of Hyde*, 92 Cal.App.2d 6, 14 [206 P.2d 420]); and a realistic viewpoint governs. (*Estate of Stevens, supra*, 163 Cal.App.2d 255, 268; *Schroeder v. Zink*, 4 N.J. 1 [71 A.2d 321, 325].) In this regard note must be taken of the declared intention of the inheritance tax provisions under consideration ''to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.'' (Rev. & Tax. Code, § 13648.)

The decedent, Mrs. Craycroft, by her transfer to the partnership in 1955 and her agreement that upon death the surviving partners should acquire her partnership interest upon payment of a specified sum, in substance, through the instrumentality of a partnership agreement, transferred an interest in property to her son and daughter to take effect in possession and enjoyment after her death. In short, through a partnership agreement Mrs. Craycroft and her children set up an instrumentality whereby she would receive the income from certain of her properties during her lifetime and her children would receive that property *in toto* upon her death. The fact that there may have been other provisions in the partnership agreement which could have defeated the foregoing purpose is not determinative of the issue presented by the events which actually have transpired. Under certain provisions of that agreement the son and daughter could have

become the sole owners of the property prior to their mother's death if she withdrew from the partnership or became insane or insolvent, but she did not withdraw and she did not become insane or insolvent. These provisions did not change the effect of those which govern a disposition of the mother's partnership interest in the event of her death. The respondents claim this interest under the latter provisions. Likewise, the fact that one of Mrs. Craycroft's children could have predeceased her and rendered the potential transfer to them for naught, does not alter the fact that her contribution to the partnership under the agreement in question set up the mechanics whereby her interest in the property formerly held by her in joint tenancy would vest in her children upon her death. As their prior death did not occur, this vesting was not defeated. The mechanics previously provided thus actually constituted an effective transfer within the meaning of section 13641 of the Revenue and Taxation Code. We conclude that the transaction under review constituted a type of transfer giving rise to inheritance tax liability if made without a valuable and adequate consideration. (*Cf. Schroeder* v. *Zink, supra,* 4 N.J. 1 [71 A.2d 321].)

The respondents contend that the transfer in question was not "without a valuable and adequate consideration," and rely upon the finding of the court that the "partnership agreement . . . was made for a valuable and adequate consideration received and given by each party to the agreement." The appellant contends that this finding is not supported by the evidence. In truth, the alleged finding is a conclusion of law and not a finding of fact. (*Salisbury* v. *Yawger,* 184 Cal. 783, 795 [195 P. 682] ; *Magee* v. *Magee,* 174 Cal. 276, 281 [162 P. 1023] ; *Joyce* v. *Tomasini,* 168 Cal. 234, 237 [142 P. 67] ; *Miller* v. *Gusta,* 103 Cal.App. 32, 36 [283 P. 946].) As the court, in substance, failed to find upon a material issue, i.e., whether or not the transfer in question was without a valuable and adequate consideration, and there is substantial evidence on that issue which would support a finding adverse to the judgment entered, it is necessary that a reversal be ordered and the case remanded for reconsideration. (*Edgar* v. *Hitch,* 46 Cal.2d 309, 312 [294 P.2d 3] ; *James* v. *Haley,* 212 Cal. 142, 147 [297 P. 920].)

The term "valuable and adequate consideration" when applied in determining the inheritance taxability of an *inter vivos* transfer is defined by section 13641 of the Revenue and Taxation Code as "a consideration equal in money or in

money's worth to the full value of the property transferred.'' This definition carries a more restricted meaning than that applied by the court in actions upon a contract. (*Giannini* v. *Commissioner of Internal Revenue,* 148 F.2d 285, 287.)

Evidence upon the issue of the adequacy of consideration to support a nontaxable *inter vivos* transfer must be viewed in the light of the relationship existing between the parties, and where the situation is one fraught with opportunity to fix the taxable value of an estate by *inter vivos* agreement it is the obligation of the court to closely scrutinize the transaction in the light of the expressly declared intention of the statute ''to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.'' (Rev. & Tax. Code, § 13648; *Schroeder* v. *Zink, supra,* 4 N.J. 1 [71 A.2d 321, 326]; *In re Cowles' Estate,* 36 Wn.2d 710 [219 P.2d 964, 967].)

In the case at bar there is evidence which would support a conclusion that, as of January 1, 1955, being the partnership commencement date, the actual value of the stock which Mrs. Craycroft contributed to the partnership exceeded the book value assigned to it by an amount in excess of $42,500. Data supplied by the ''Hill Work Sheet'' indicate that Mrs. Craycroft paid $79,176.36 for this stock and this amount, i.e., the historical cost thereof, was set up in the partnership books as a part of her capital contribution, whereas, a computation made by the inheritance tax appraiser, which was admitted in evidence, furnishes information indicating that the actual value of that stock on the aforesaid date was $121,728.80.

The adequacy of the consideration for an *inter vivos* transfer is determined as of the date the transaction effecting that transfer occurs; when the transfer is effected by a written instrument the consideration is determined as of the date of the execution of that instrument. (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 266.) On January 1, 1955, as a part of the partnership agreement, Mrs. Craycroft agreed that her children should receive her interest in the partnership upon her death in consideration of their promise to pay her estate the book value of her contribution, and contemporaneously transferred to the partnership stocks and bonds which, it may be concluded, exceeded the book value for which she was given credit by more than $42,500. For

inheritance tax purposes, therefore, the determinative issue in this case is whether, under the evidence, the promise of the children to pay a fixed amount to their mother's estate in consideration of her transfer to them of property to vest in possession and enjoyment upon her death, was equal in money or money's worth to the actual value of that property at the time the promise was made; the property being the mother's interest in the partnership and the fixed amount being the book value of that interest. The value of such a promise is directly related to the prospective actual value of the mother's partnership interest at the time of death. The inquiry thus posed involves a consideration of many factors, including the prospective time between transfer and death; the relationship between the parties, i.e., whether harmonious or hostile feelings existed (*Commissioner of Internal Revenue v. Bensel,* 100 F.2d 639), whether they are the natural objects of each other's bounty (*Giannini* v. *Commissioner of Internal Revenue, supra,* 148 F.2d 285, 287), and whether they are dealing with each other at arm's length (*In re Cowles' Estate, supra,* 36 Wn.2d 710 [219 P.2d 964, 967]); the type of partnership business, i.e., whether it is one involving certainty or speculation; the nature of the partnership assets, i.e., whether they are stable or fluctuating in value; the probability of a natural increment in the value of its assets; and whether the difference between the book value and the actual value of the contribution is great or small. From the evidence in the instant case the trier of fact could have concluded: that Mrs. Craycroft was an elderly person at the time the partnership was entered into, whose life expectancy was short compared with that of her son or daughter, and the interim between transfer and vesting of possession and enjoyment would not be of such duration as to permit any deteriorating effect upon the value of her partnership interest; that these three people were members of a closely knit family who were the natural objects of each other's bounty; that the partnership constituted primarily a holding company, with assets consisting of stock and bonds that experience had proven were of the type which would steadily increase in value; that the partnership business did not involve hazardous stock and bond buying or selling ventures; and, as heretofore indicated, that the difference between the price to be paid for Mrs. Craycroft's partnership interest and the actual value of her contribution exceeded $42,500. This evidence, if accepted by the trier of fact, would support a conclusion that the promise to pay

the book value of the decedent's contribution was not a consideration in money or money's worth for the transfer under review.

It is urged that the reciprocal promise of the son and daughter that their mother should receive their interest in the partnership upon their death on payment of the book value thereof, constituted an adequate consideration for the transfer under review. However, it is no answer to the problem at hand to say that the transaction in question is a nontaxable transfer within the intent and purpose of the taxing statute because Mrs. Craycroft could have escaped the payment of an inheritance tax in the event her son and daughter predeceased her and she acquired their full interest in the partnership under the same agreement.

It should be noted that, although the tax liability for an *inter vivos* transfer is dependent upon a finding of inadequacy of consideration at the time the transaction effecting the transfer occurred, in the event such liability is established the amount of tax is determined by the value of the property actually received through the method which it is concluded was substituted for the passing of property by will or the laws of succession. As heretofore noted, it is the intent of the statute that "the tax shall be measured by beneficial succession." (*Estate of Rath, supra,* 10 Cal.2d 399, 405.) Should the trial court determine that the transfer in this case was without an adequate consideration, the beneficial succession effected by that transfer would relate to the excess in actual value of the partnership interest of the deceased person, determined as of the date of her death, over the amount which the surviving partners agreed to pay therefor. (*Schroeder* v. *Zink, supra,* 4 N.J. 1 [71 A.2d 321, 326].) The trial court found the amount of this excess to be $64,525.19, and also found that it came into the possession and enjoyment of the surviving partners upon the death of the deceased partner. This finding determined the character and value of the property which was the subject of the *inter vivos* transfer.

Under the partnership agreement the book value of the decedent's partnership interest was payable to her estate; this was an asset of that estate which should be accounted for and appraised as a part thereof; its appraised value should coincide with the agreed value; and the trial court's conclusion accordingly was correct. However, the failure to properly find upon the issue of inadequacy of consideration to sup-

port the *inter vivos* transfer of the $64,525.19 excess in value left undetermined the taxability of that transfer and the order of the court fixing the tax liability under consideration without such determination was error.

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.