[Civ. No. 40798. Second Dist., Div. Two. Apr. 27, 1973.]

Estate of KATHERINE L. HOWE, Deceased.
HOUSTON I. FLOURNOY, as State Controller, et al.,
Petitioners and Appellants, v.
JOHN MARSHALL HOWE, as Executor, etc., Objector and Respondent.

## COUNSEL

Myron Siedorf, Walter H. Miller and Edwin Rosenthal for Petitioners and Appellants.

Douglas E. Schmidt, Howard M. Simon and Schramm, Raddue & Seed for Objector and Respondent.

## OPINION

ROTH, P. J.—The State Controller and inheritance tax referee appeal from an order fixing the inheritance tax for the above named estate.

On December 11, 1965, Katherine L. Howe (Katherine), aged 63, executed an "Annuity Agreement" with her two sons, John Marshall Howe and Norman Ross Howe, pursuant to which she transferred in late April and early May of 1966, three parcels of encumbered real property to John and Norman in consideration of their joint and several promises to pay to her, commencing May 1, 1966, the monthly sum of $735.59 "during the full term of her natural life." Katherine died on May 25, 1969.

The stipulated facts disclose (1) the net value of the properties on the transfer date was $120,000;[1] (2) the net value of the properties on May 25, 1969, the date of Katherine's death, was $135,978; (3) John and Norman had the means to make the payments described in the annuity agreement without recourse to income generated by the transferred property; (4) the net rental of the three transferred properties, before income taxes and without allowance for depreciation, for the years 1966 through 1969, was as follows: 1966—$9,274; 1967—$10,928; 1968—$12,684; 1969—$14,785; and (5) John and Norman had fixed the amount of the annuity on the basis of a letter from Mutual Life Insurance Company of New York which stated in pertinent part:

"You wanted to know the monthly income for a single premium life annuity of $120,000 for a woman age 63 in August of 1965, residing in California.

"The monthly life income would be $735.59. This amount is based on a figuring date of May 1, 1966 with the first check to arrive one month later. All the factors such as discount for size, state tax, completed months since last birthday, etc., have been taken into account.

"My rough estimate of $720 to $750 per month was made to you previously without all these factors being considered."

The inheritance tax appraiser included the three parcels as part of decedent's estate subject to inheritance tax in the report he filed after her death, and found a total tax due in the amount of $10,310. John and Norman object to the report of inheritance tax referee on the ground that

---

[1] The three parcels had been appraised (in a multi-page document made a part of the stipulated facts) as of November 15, 1965, by Tait Appraisal Company of Los Angeles at a fair market value of $130,000.

the property was not subject to tax. The trial court sustained the objection and made the order from which this appeal is taken.

The decisive issue raised on appeal is stated by appellants as follows: "The issue . . . is whether the transfers . . . [were] for less than a full and adequate consideration in money or money's worth within the meaning of the Inheritance Tax Law."

The stipulated facts show an inter-family transaction. We therefore subject it to careful scrutiny. (*Estate of Craycroft,* 191 Cal.App.2d 436, 445 [12 Cal.Rptr. 552].) However, it should be noted that no question was raised nor was it contended in the trial court that the transfer at bench was made in contemplation of death. Such cases as *Estate of Giolitti,* 26 Cal.App.3d 327 [103 Cal.Rptr. 38], cited by appellants, are not applicable. It should be noted further that the stipulated facts admit that Katherine divested herself completely of title and possession and of all interest in the three parcels of property and that there was no contention in the trial court nor is there one before us arguing the contrary. Cases such as *Estate of Madison,* 26 Cal.2d 453 [159 P.2d 630], *Estate of Hyde,* 92 Cal.App.2d 6 [206 P.2d 420], are therefore not in point.

Since the record suggests no others, this court on the record is limited to the issue as appellants state it.

Appellants argue that the commercial tables (admittedly obtained from a recognized insurance company of standing) used by John and Norman are an improper basis for valuation and assert higher monthly annuity payments than those obtained would have been fixed if calculation thereof were determined according to either Table A, Inheritance Tax Regulation 13952-13954(1), chapter 2.5 of title 18, California Administrative Code, or Table I[2] of the Federal Estate Tax Regulations, Treasury Regulations, section 20.2031-7(f). However, the only evidence in the record to compel the use of the tables appellants urge or which contradicts the value of the consideration paid as fixed by the annuity agreement, is the

---

[2]Table A, Inheritance Tax Regulation 13952-13954(1), is the annuity factor table required to be used by Inheritance Tax Regulation 13952-13954(b) in determining for inheritance tax purposes the present value of annuities bequeathed by a decedent and which become effective at his death. Table I of the Federal Estate Tax Regulations, Treasury Regulations, section 20.2031-7(f), is required to be used to determine the present value of annuities which are receivable by a beneficiary by reason of surviving a decedent to whom the annuity was payable and which are taxable under section 2039, Internal Revenue Code. Both Table A and Table I thus concern annuities which are transferred at the time of death and do not apply to *inter vivos* transfers such as that in the case at bench.

*argument* of appellants that the monthly payments John and Norman had obligated themselves to pay was less than what they would have been required to pay by the inheritance tax tables if the annuity had been determined in accordance with those tables.

Appellants have not cited and we find no California cases requiring the use of government rather than commercial annuity tables in a case such as the one at bench. It is true that *Dunigan* v. *United States,* 434 F.2d 892, cited by appellants, and *Miami Beach First National Bank* v. *United States,* 443 F.2d 116, affirm the principle that the government tables must be used in determining the value of private annuity contracts in federal estate and gift tax litigation unless the taxpayer can present evidence sufficient to prove that such tables are inapplicable and commercial tables more suitable to his particular case. However, even in those cases the opinions indicate that when both tables are used adequate consideration becomes a question of fact for court and jury. The use of tables employed by commercial insurance companies was therefore proper.

The trial court accepted use of commercial annuity tables employed by insurance companies as a proper base for valuation at the time of the annuity contract and found that payments to be made based thereon constituted adequate consideration for inheritance tax purposes. (*Estate of Stevens,* 163 Cal.App.2d 255, 266 [329 P.2d 337].)

The court made findings and conclusions in pertinent part as follows:

"The Court finds that the value of the transferee-sons' promise to pay to their mother the annuity provided in the Annuity Agreement admitted herein by stipulation was $120,000.00 on the dates of the transfers of the three parcels to them by their mother.

"CONCLUSIONS OF LAW

"From the stipulated facts and from the foregoing finding of act [*sic*], the Court makes the following conclusions of law:

"1. The transferee-sons' promise to pay their mother the annuity prescribed in the Annuity Agreement admitted herein by stipulation was an adequate and full consideration in money, or money's worth, for their mother's transfer to them of the three parcels described in said Annuity Agreement.

"2. No portion of the value of the three parcels transferred by the decedent during her lifetime is subject to inheritance tax in the decedent's estate.

"3. The inheritance tax in the decedent's estate should be computed as follows:

"Probate estate ............................. $77,397.
"Joint tenancy ............................. 500.
"Transfers ($135,978.) ....................... excluded
                                             $77,897.

JOHN MARSHALL HOWE—Son

JT ....... $   500.    $ 5,000. Sp. Ex.
½ Estate ..  38,698.    20,000. at 3%  ....... $   600.
            ─────────    14,198. at 4%  .......     568.
            $39,198.                            ─────────
                                               $ 1,168.

NORMAN ROSS HOWE—Son

½ Estate .. $38,699.   $ 5,000. Sp. Ex.
                        20,000. at 3%  ....... $   600.
                        13,699. at 4%  .......     548.
                                              ─────────
                                              $ 1,148.

                    TOTAL TAX ....... $ 2,316.

"4. That the Objector, John Marshall Howe, Executor, is entitled to any such further and supplementary order as may be required to carry the judgment of this Court into effect.

"5. That judgment be entered accordingly."

█  It is settled that "The adequacy of the consideration for an *inter vivos* transfer is determined as of the date the transaction effecting that transfer occurs; . . ." (*Estate of Craycroft, supra,* 191 Cal.App.2d 436, 445; see also *Estate of Stevens, supra,* 163 Cal.App.2d 255, 266.)

The stipulation of facts upon which this case was tried is narrow. This court is bound by it. (*Asher* v. *Johnson,* 26 Cal.App.2d 403, 407-408 [79 P.2d 457].)

█  There is no evidence which indicates whether Katherine was in sound or failing health at the time of the annuity agreement, or of what

the net rental income, after depreciation from the parcels involved, had been for a period of years prior to the date of transfer; whether there were amortization payments on the extant mortgage, in addition to interest; whether, after the transfer, capital improvements were made on the property; how and by whom the property was managed before and after the transfer; whether the encumbrances on the property at the time of transfer were liquidated by the brothers after the transfer, or refinanced on more favorable terms or whether taxes over the period of some years before the transfer, had increased or decreased.

Obviously, if the property had, prior to the time of transfer, been leased for a period of years, extending beyond or equal to Katherine's life expectancy, on net-net terms to responsible tenants and had produced and would continue to produce net income substantially equivalent to or in excess of the amount of the annuity the brothers had agreed to pay, or showed other firm leases with solvent tenants over a period of future years, with escalation rent clauses, the adequacy of the consideration would be placed in question or serious doubt. (*Estate of Stevens, supra,* 163 Cal.App.2d 255, 263-265.)

There is no showing of the character of the tenants, whether they were new or old, or of any of the other terms of the leases or the condition of the property, what, if any repairs or alterations of the property would be required to keep old tenants or acquire new ones.

We must assume that appellants had sound reasons for limiting their case to the stipulated facts.

In view of all of these unanswered questions and the stipulation that the brothers who were jointly and severally liable, "had the means to make the payments prescribed under the Annuity Agreement without recourse to income generated by the parcels transferred to them by the annuitant . . ." we think the finding of the trial court in respect of adequacy of consideration proper.

The judgment is affirmed.

Compton, J., concurred.

**FLEMING, J.,** Concurring. — Respondents have apparently solved the problem of transferring property from one generation to the next without paying either gift or inheritance tax.

The method involves the transfer of property from parent to child in

return for a promise, the attribution of an inflated value to the child's promise, and the assertion on the death of the parent that adequate and full consideration for the property was paid at the time of its transfer. In this case we are solemnly assured that an unsecured promise by private persons to pay a lifetime annuity is worth the same amount of money ($120,000) as a similar promise by Mutual Life Insurance Company of New York. Under this argument the unsecured promise of a private individual becomes equal in value to the promise of one of the largest insurance companies in the world. Wholly ignored is the far greater probability of the insurance company's performance of its promise, brought about by its vastly superior financial resources, its stability and safety as an enterprise, its regulation as a life insurer by the State of New York, its legal requirements for reserves, its prudential limitations on investments, and its perpetual existence. At bench, not only was the private promise to pay wholly unsecured but it was the promise of relatives, a notoriously unreliable class of promise performers when weighed in the scales of human experience. Additionally, the rights of the promisee were made nonassignable and nontransferable, and no minimum period for payment of the annuity was provided.

Under my calculations the unsecured promise of a relative to pay a nontransferable annuity is worth less than half the comparable promise of a reliable life insurance company. On this evaluation property worth $120,000 was transferred for a promise whose actual value amounted to less than $60,000. And while it is true that the subsequent income of the transferred property is not strictly relevant to the issue of adequacy of consideration at the time of transfer (*Estate of Stevens,* 163 Cal.App.2d 255, 265-266 [329 P.2d 337]), still the fact that the annual payments under the annuity were less than the annual income of the property points up the gross inadequacy of the consideration given for the transfer.

While the foregoing conclusions seem self-evident to me, the record is wholly barren of any evidence or expert opinion to alter the tableau staged by respondents, which depicts the unsecured promise of relatives to make periodic payments to the promisee as identical in value with the secured promise of a reliable life insurance company to do the same thing. Unaccountably, the State Controller failed to present any evidence of the true value of respondents' promise and elected to stand on the evidence produced by his opponents. The record thus contains nothing to contradict the finding and conclusion of the trial court, fantastic though it may be, that the transfer was for an adequate and full consideration in money's worth. (Rev. & Tax. Code, §§ 13641, 13645.) This court cannot create

evidence, and at this stage of the litigation it would be inappropriate to require the parties to start anew. Respondents, therefore, have won their case by default, and the finding must stand.

A petition for a rehearing was denied May 18, 1973, and appellants' petition for a hearing by the Supreme Court was denied June 20, 1973.