**Walter GRANTHAM, Executor of the Estate of Daniel I. Perlberg, Petitioner/Appellant,**

v.

**STATE OF TENNESSEE BOARD OF EQUALIZATION and the Commissioner of Revenue of the State of Tennessee, Respondents/Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

July 3, 1991.

Permission to Appeal Denied by Supreme Court Jan. 6, 1992.

Harry Berke, Berke, Berke & Berke, Chattanooga, for petitioner/appellant.

Charles W. Burson, Atty. Gen. & Reporter, William P. Sizer, Asst. Atty. Gen., Nashville, for respondents/appellees.

## OPINION

CANTRELL, Judge.

Daniel I. Perlberg's executor has appealed the State Board of Equalization's valuation, for inheritance tax purposes, of the stock in United Liquors of Chattanooga, Inc., a closely held corporation. The controversy is whether the stock's value is affected by a binding agreement allowing another shareholder or the corporation to purchase the stock at book value. We hold that under the facts of this case, the market value of the stock should be included in the decedent's estate.

### I.

In May of 1963, Sidney Perlberg granted to his brother Daniel an option to purchase, at Sidney's death, up to one-half of the outstanding shares of United Liquors Corporation of Chattanooga, Inc. The agreement provided that the purchase price would be based on book value and could be paid by making a $1500 down payment and executing a note for the balance payable over a ten year period at four percent interest.

Sidney died in March of 1966 and Daniel promptly exercised the option. On April 12, 1966, Sidney's executor transferred to Daniel 500 shares of the corporate stock. After that transfer Daniel and Sidney's widow, Ide Perlberg, each owned exactly fifty percent of the corporation.

The record contains two agreements executed on April 7, 1966. In one agreement Daniel granted to Ide an option to purchase up to fifty percent of the stock of United Liquors from his estate. The other agreement is identical except the grantor is Ide and the grantee is Daniel. Then, on April 12, 1966, the same day the executor of Sidney's estate transferred the 500 shares in the corporation to Daniel, Daniel and Ide signed a new agreement in which they each granted to the company (or to the other party if the company failed to exercise its option) the option to acquire from their estate all the stock in United Liquors owned at the time of death of one of the parties. The price was to be based on the book value of the stock and could be paid by making a $1500 down payment and executing a ten year note for the balance at the then-current interest rate paid by the Hamilton National Bank to its depositors.

The agreement also provided that for a ten year period both parties were prohibited from selling their shares in the company without giving the company and the other party the right to purchase the shares at book value for cash.

Daniel died on September 14, 1980 and the corporation exercised its option to buy his shares of the stock. The corporation paid $1500 down and made a note for $260,-835.86 payable over ten years at seven and one-half percent interest.

On the inheritance tax return Daniel's executor reported $131,918.00 as the value of the shares in United Liquors. That figure was the sum of the $1500 down payment plus the face amount of the note discounted by fifty percent because the short term interest rates in Chattanooga in 1980 were eighteen percent and the note only carried interest at seven and one-half percent.

The Commissioner of Revenue took issue with the value reported by the executor. The Commissioner valued the total stock in the corporation at $1,107,378.00 using the average net profit capitalized at fifteen percent. One-half of that amount was assigned to the estate as the value of Daniel's shares in the corporation. The executor appealed to the State Board of Equalization where the Assessment Appeals Commission affirmed the findings of the Commissioner. The Chancery Court of Davidson County reviewed the decision and held that the valuation was supported by substantial and material evidence. *See* Tenn. Code Ann. § 4–5–322.

### II.

Our statutes require that, for inheritance tax purposes, all property in a decedent's estate "be appraised at its full and true value at the date of the death of the decedent." Tenn.Code Ann. § 67–8–412(a). So far as we can tell, this is the first case in this jurisdiction dealing with the value of

stock in a closely held corporation where the stock is subject to an option at less than the "full and true" value.

The problem is not new, however. Other states and the federal government have faced this dilemma and have come up with varying results. *See* Annotation, *Taxation—Value of Corporate Stock*, 58 A.L.R.3d 1104 (1974). The decisions fall under two broad headings. One heading could be termed the "federal rule" under which the decisions say the contract price determines the value. *In re Miller's Estate*, 191 Misc. 784, 79 N.Y.S.2d 372 (1948). The other heading, called the "Pennsylvania rule," covers decisions which hold that the contract price does not determine the value, but is one factor that may be taken into consideration. *In re McLure's Estate*, 347 Pa. 481, 32 A.2d 885 (1943).

Each party in this case has fought hard for the adoption of one of the two rules. We think, however, that the blind application of either rule in this case without reference to the inheritance tax statutes would only compound the confusion over the issue. The tax, after all, is to be strictly construed against the state, *Woods v. Paschall*, 547 S.W.2d 575 (Tenn.1977), so the statutory scheme must be carefully considered.

■ The Tennessee Inheritance Tax is not a tax on the property in a decedent's estate. It is instead a tax on the privilege of receiving the decedent's property by a beneficiary or distributee. *Hutchison v. Montgomery*, 172 Tenn. 375, 112 S.W.2d 827 (1938). The tax is on the transfer from the dead to the living. 42 Am.Jur.2d *Inheritance, Estate, and Gift Taxes* § 4 (1969). *See* Tenn.Code Ann. § 67–8–304.

■ In Tenn.Code Ann. § 67–8–303(a) the legislature described the property subject to the tax:

(1) When the transfer is from a resident of this state:

(A) Real property situated within this state;

(B) Tangible personal property, except such as has an actual situs without this state;

(C) All intangible personal property;

(D) Proceeds of insurance policies, except as hereinafter provided; and

(E) Proceeds of certain employee benefit trusts and plans to the extent hereinafter provided; or

\*　　\*　　\*　　\*　　\*　　\*

We are concerned in this case with the intangible personal property of Daniel Perlberg, a resident of this state. Intangibles are defined as "relationships between persons natural or corporate which the law recognizes by attaching to them certain sanctions enforceable in courts." *Curry v. McCanless*, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939).

Next, the legislature described the transfers subject to the tax. *See* Tenn.Code Ann. § 67–8–304. Without going through all of them, we note the first three with which we are generally familiar: transfers by will, by the laws of descent and distribution, and by gifts in contemplation of death. Tenn.Code Ann. § 67–8–304(1), (2), (3). If we were only concerned with these three the executor would be correct. The transfer passing under Daniel's will was the reduced value of the consideration received when the corporation exercised the option.

■ More important to this case, however, is the next provision covering a particular kind of transfer described as:

(4) If by a resident, any property specified in § 67–8–303(a)(1), and, if by a nonresident, any property specified in § 67–8–303(a)(2) transferred by the decedent prior to death by gift or grant intended to take effect in possession or enjoyment at or after death;

Tenn.Code Ann. § 67–8–304(4).

This provision is a common one in inheritance tax statutes and is referred to by the courts and writers as the "possession or enjoyment" provision. *See* 42 Am.Jur.2d *Inheritance, Estate, and Gift Taxes* § 103 (1969). Contracts granting to third parties an option to purchase property from the decedent's estate are transfers intended to take effect in possession or enjoyment at the decedent's death. *In re Estate of Bielec*, 8 Cal.3d 213, 502 P.2d 12, 104 Cal.Rptr.

516 (1972); *In re Craycroft's Estate,* 191 Cal.App.2d 436, 12 Cal.Rptr. 552 (1961); *In re Birkeland's Estate,* 56 Wash.2d 441, 353 P.2d 667 (1960); *Schroeder v. Zink,* 4 N.J. 1, 71 A.2d 321 (1950). One court has said:

> The fact that the decedent's widow succeeded to an option right rather than an immediate right to the property makes no difference. Her right to exercise the option to acquire the property became effective at decedent's death.

*In re Birkeland's Estate,* 353 P.2d at 670.

We are of the opinion that the option given Ide Perlberg and the corporation is within the definition of intangibles in Tenn. Code Ann. § 67–8–304(4) and that the contract of April 12, 1966 granted to the corporation and Ms. Perlberg a right intended to take effect in possession or enjoyment at Daniel Perlberg's death. The sum of the value of the transfer under the will and the value of the transfer taking effect at death equals the market, i.e. the full and true, value of the stock. And while we might not have arrived at the same value as the commissioner, we think his value is supported by substantial and material evidence.

■ The inquiry does not stop there, however, because the Code also says that in considering a transfer taking effect at death, the amount of consideration given for the transfer shall not be included. Tenn.Code Ann. § 67–8–304(6). Although that section of the Code is not entirely clear, we think it means that any consideration given for the transfer taking effect at death may be taken as a credit against the value of the transfer. In this case, the decedent and Ide Perlberg gave mutual options in the agreement of April 12, 1966. Therefore, we do not think any credit based on consideration given for the option can be taken by the executor—the consideration flowing to Daniel being offset by the same consideration flowing to Ms. Perlberg.

Since the executor is charged with paying the tax regardless of to whom the transfer is made, Tenn.Code Ann. § 67–8–417(a), the assessment is affirmed.

We specifically do not take any position on the individual value of either transfer or the ultimate liability of any of the legatees or distributees for the tax. That decision must be made after all parties are given an opportunity to be fully heard.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

KOCH, J., and WILLIAM H. INMAN, Special Judge, concur.