LASSER, P.J.T.C.
Plaintiffs contest a transfer inheritance tax assessment imposed by the Director on the termination of a mortgage with a balance of $152,306.86 at the death of Helen Millar, as a transfer taking effect at or after death, pursuant to N.J.S.A. 54:34-1(c).

The Facts.

The mortgage was received by Helen Millar and Joseph Millar, her husband, pursuant to an agreement dated July 30, 1980 with Harry Millar, Joseph’s son. Harry and Joseph conducted a veterinary practice as a professional association under the name J. & H. Millar, P.A. Joseph owned six shares of the professional association and Harry the remaining four. The practice was located on property owned by Millar Animal Hospital, Inc., a landholding corporation formed by the Millars in 1970. Joseph and Helen owned a joint 83.3% interest in the *50 landholding corporation, and Harry owned a 16.7% interest. The principal assets of this corporation were two adjoining parcels of land on Monmouth Road in Ocean Township, New Jersey. One parcel, consisting of lots 70 and 71, was improved with the animal hospital housing the veterinary practice. The other parcel, lot 69, was improved with a bank building under a long-term lease to United Counties Trust Company.
In 1979, Harry and Joseph discussed restructuring their veterinary practice to reflect Joseph’s age (then 78) and his diminished participation. Harry was working 60 hours a week and Joseph 25 hours a week. Each retained independent counsel to negotiate a reorganization of the family’s business assets. Harry testified that the goal of this reorganization was to insure that he could continue the veterinary practice at its existing location and to provide Joseph and Helen with financial security for the rest of their lives. (Helen was then 76).
The attorney who represented Joseph and Helen in the transaction testified that they intended to convert their interests in the practice and the real estate into a guaranteed income for the remainder of their lives. He stated that Joseph and Helen desired an annual income stream of $30,000-$35,000.[1] He testified that lot 69 was valued at $70,000 based on a capitalization of the income derived from the bank rental and a value of $220,000 to $250,000 was placed on the property used by the veterinary practice based on appraisal input (not presented at trial) and the judgment of the attorneys as to its market value. The witness stated that all negotiations were conducted at arm’s length by the attorneys, and the Millars did not become involved in the details of the negotiations. The witness further stated that income tax aspects of the transaction were discussed but inheritance tax implications were not considered.
*51 The landholding corporation was dissolved and its assets distributed to Joseph, Helen and Harry in proportion to their shares in the corporation. Joseph and Helen received a joint, undivided 83.3% interest and Harry an undivided 16.7% interest in the three lots.
The July 30, 1980 agreement provided for the transfer of ownership interests in lots 69-71 and the transfer of ownership of J. & H. Millar, P.A. The provisions of the agreement were:
1. Joseph and Helen would transfer their interest in the animal hospital (lots 70 and 71) to Harry. Their 83.3% interest in these lots was valued at a total of $166,680 for the transaction. The attorney testified that the $166,680 figure was obtained by working backward from the desired monthly income payments. The transfer would be subject to a lease to J. & H. Millar, P.A. for a term of five years at a rental of $1,438.96 a month. This lease was to be “net-net,” with all expenses paid by the tenant, and the tenant would have an option to renew for an additional five years.
2. The $166,680 purchase price would be paid by Harry as follows:
a. Harry would convey to Joseph and Helen his 16.7% interest in lot 69, valued at $8,330.
b. The balance of the purchase price of $158,350 would be an obligation of Harry, secured by a 25-year, 10% purchase money mortgage on the animal hospital property in the amount of $158,350, with monthly payments for principal and interest of $1,438.96. An insurance policy on Harry’s life would be kept in force during the term of the mortgage. Notwithstanding its 25-year term, the mortgage would become fully satisfied on the death of the survivor of Joseph and Helen, who also agreed to provide for this termination in their respective wills.
3. Harry would purchase from Joseph two shares in J. & H. Millar, P.A. for their book value of $24,320.
4. Joseph would receive an annual salary of $2,750 and a sum equal to 40% of the earnings of J. & H. Millar, P.A., as well as reimbursement for expenses incurred in attending veterinary conventions.
*52 Thereafter, the terms of the agreement were carried out, and the mortgage was executed and recorded. Harry made monthly mortgage payments to Joseph and Helen. Joseph died on February 13, 1982. Helen became entitled to the monthly payments of $1,438.96 for her life, and Harry made the monthly payments to her. Helen died on October 23, 1984. Both Harry and the attorney who represented Joseph and Helen testified that until her death, Helen had the right to foreclose the mortgage if Harry did not make the payments.
The chief auditor of the Inheritance Tax Bureau testified that the Division taxed the termination of the mortgage on Helen’s death because, in its view, the purchase of the property was not a completed transaction until the mortgage terminated at Helen’s death. This witness stated that Joseph and Helen reserved income from the property for their lives and could foreclose the mortgage in the event of default, and that these rights constituted a “string” (an interest) that Helen retained until her death. Because she retained an interest not surrendered until her death, the transfer was one to take effect at death.
Plaintiffs contend that the economic substance of the transaction was the conveyance of property to Harry in exchange for income payments to Joseph and Helen for their lives. They claim that Harry’s obligation to make monthly payments for life to his father and stepmother was the equivalent of an annuity that terminated at the death of the survivor. They argue that the expiration of this annuity is not a transfer that takes effect at death because the annuity was obtained in an arm’s-length transaction prior to death and the obligation to make periodic payments terminates by its terms. To support this argument, plaintiffs introduced in evidence, without objection, the affidavit of a licensed investment adviser which stated that if a joint and survivor annuity with monthly payments of $1,438.96 had been purchased for Joseph and Helen on October 1, 1980 from one insurance company, the cost would have been $124,235, and from another company would have been $141,378. The affidavit averaged these two figures at $133,000. Plain *53 tiffs contend that the transfer of Harry’s interest in lot 69 (the bank parcel) and the monthly payments for life constituted full and adequate consideration for Joseph’s and Helen’s interest in lots 70 and 71 (the animal hospital parcel).

Discussion.

 N.J.S.A. 54:34-1(c) imposes a tax on the transfer of property intended to take effect in possession or enjoyment at or after death. The purpose of the statute is to prevent the avoidance of transfer inheritance tax by a lifetime transfer, which is, in effect, a substitute for or the substantial equivalent of a testate or intestate distribution.[2] In re Estate of Lingle, 72 N.J. 87, 367 A.2d 878 (1976). The statute does not impose tax on absolute, outright gifts, In re Honeyman, 98 N.J.Eq. 638, 129 A. 393 (Prerog.Ct.1925), except if made in contemplation of death, but does impose tax on transactions which transfer ownership of property to a transferee where an interest is reserved to the transferor until his death. If property is transferred prior to death, it is the presence of a retained interest transferred at death which triggers taxation. In re Estate of Lichtenstein, 52 N.J. 553, 247 A.2d 320 (1968).
An example of a transaction which comes within the statute is one in which a settlor creates a trust and transfers property to the trust but reserves the income to himself until his death. The settlor is not regarded as having given up the property since he retains a right to the income, which right terminates at his death, and the transfer is regarded to be effected at that time. See Carter v. Bugbee, 91 N.J.L. 438, 103 A. 818 (Sup.Ct. 1918), aff'd 92 N.J.L. 390, 106 A. 412 (E. & A.1918).
Where the transaction involves the conveyance of property, it is well settled that if the transferor receives full and adequate consideration for the transferred property, the transferor has *54 not retained an interest in the property and no inheritance tax is imposed. In re Honeyman, supra; Schroeder v. Zink, 4 N.J. 1, 71 A.2d 321 (1950). The underlying rationale of these cases is that when a transferor receives full consideration, he is being reimbursed for all of his interests in the property. There is no depletion of the transferor’s assets because the amount of assets remains substantially the same, although changed in form.
In the subject case, there is a transfer that takes effect at death. The right to receive monthly payments terminates at death, and the balance due on the mortgage of $152,306.86 is forgiven. On its face, the termination of the mortgage is a transfer which takes effect at death.
Plaintiffs argue that although the mortgage terminates at death, the transfer does not take effect at death because the transferors received full consideration for their interest in the property during their lifetime in the form of an annuity. However, the transferors did not receive an annuity. They received a mortgage to secure a debt of $158,350, which mortgage was duly recorded in accordance with the customary procedure in a real estate transaction.[3] The taxability of a transaction is governed by what actually took place, not by a hypothetical annuity, the actual cost of which is not known because it was neither applied for nor purchased. General Trading Co., Inc. v. Taxation Div. Director, 83 N.J. 122, 416 A.2d 37 (1980); Schroeder v. Zink, supra.
Plaintiffs’ contention that the monthly payments constituted an annuity which was full consideration for the purchase is without merit, primarily because Joseph and Helen received a note and mortgage, not an annuity, but additionally, because the facts do not support plaintiffs’ interpolation of the transaction. Plaintiffs have not established that the payment received *55 equals the value of the property transferred.[4] The evidence of value of the animal hospital property and the purported annuity received is insufficient to establish that Harry’s monthly payment obligation represents full and adequate consideration for Joseph’s and Helen’s interest in the animal hospital property. Thus, plaintiffs’ contention that the monthly payments constituted an annuity which was full consideration for the purchase fails.
I find that the termination of the mortgage at Helen’s death is a transfer of the then mortgage balance of $152,306.86 taking effect at her death. I find that the transaction actually entered into by the parties is controlling and that plaintiffs cannot avoid the transfer inheritance tax consequences by attempting to mold it into another form.
I therefore find that the transfer is subject to tax and affirm the Director’s assessment. The Clerk of the Tax Court is directed to enter judgment affirming the assessment.

The $30,000-$35,000 income stream was to be derived from the transfer of the animal hospital property, income from J. & H. Millar, P.A., Social Security payments and the bank rental income from lot 69.

 N.J.S.A. 54:34-1(c) prevents depletion of an estate either through (1) transfers that take effect at or after death, or (2) gifts made in contemplation of death. The Director does not contend that the transfer in issue in this case is a gift made in contemplation of death.

 A mortgage is different from a joint and survivorship annuity. A joint and survivorship annuity does not have a fixed term. It continues for the life of the survivor. The subject mortgage terminates after 25 years, whereas an annuity would not terminate if the survivor outlived the mortgage term.

I note that the $1,438.96 monthly mortgage payments made by Harry are exactly equal to the amount paid to Harry by J. & H. Millar, P.A. under the lease from him to his professional association. This gives rise to an inference that the monthly payments made by Harry to Joseph and Helen represented only the income on their interest in the animal hospital property conveyed to Harry, not full payment for their interest.